THE PLANTERS' MUTUAL INSURANCE COMPANY V.
S. LYONS, LINDENTHAL & CO.

1. A policy of insurance contained, among other stipulations, the following, viz. : "If the assured shall have, or shall hereafter make, any other insurance on the property hereby insured, or any part thereof, without the consent of the company written hereon, * * * then, and in every such case, this policy shall be void." The agent of the company was informed by the assured that additional insurance had been obtained. *Held*, that it was the duty of the company, upon being notified of the additional insurance, to have endorsed the same upon the plaintiff's policy, or notified the insured of the refusal of the risk, and that, having failed to do so, it is estopped from setting up as a defense that such additional insurance was not endorsed on the policy.
2. An agent of an insurance company authorized to make and revoke contracts of insurance, is the proper person to give consent to the procuring of new insurance, unless his powers be restricted by the company in this respect, and the insured have notice of the restriction.
3. Where a party has, by his representations or conduct, induced the other party in a transaction to give him an advantage, which it would be against equity and good conscience for him to assert, he cannot be permitted to avail himself of that advantage.

4. Insurance companies doing business through agencies at a distance from their principal places of business, are responsible for the acts of their agents within the general scope of the business with which they are entrusted, and no limitation on the authority of the agent will be binding on the parties with whom he deals, unless such limitation be brought to their knowledge.

APPEAL from Harris. Tried below before the Hon. James Masterson.

Suit by the appellees to recover $6000 gold on a policy of insurance (No. 12) upon a stock of goods in Waco, insured 13th of August, 1870. The goods were destroyed by fire on the eighth of April, 1871. The appellants' defense rested mainly on the ground that the appellees had procured other and additional insurance without the written consent of the appellants. The policy contained, among other stipulations, the following, viz.: "If the assured shall have, or shall hereafter make, any other insurance on the property hereby insured, or any part thereof, without the consent of the company written hereon, * * * then, and in every such case, this policy shall be void." The application for the policy, made a part thereof, stated the value of the stock on hand on the thirteenth of August, 1870, at $12,000 gold, and the average stock at $10,000. The appellees, by amended petition, alleged that after procuring the policy they went to the general agent of the defendants, E. A. McKinney, and informed him of their desire to increase their stock of goods, and to procure other insurance; that McKinney, acting as such agent, and with full power, * * "did advise and assist plaintiffs in getting the other insurance, and did then and there, to-wit, about January, 1871, deliver to one of these plaintiffs a certain written advertising card of Massie & Herndon, insurance agents, at Galveston, Texas; and did then and there write upon the back of the same as follows, viz.: 'Frame range; now insured for $6000, at four per cent.; average stock

$12,000.   Lyons will select company, and I will make application.

    (Signed)                  "'E. A. McKINNEY.'"

The appellant filed a plea under oath denying that such written consent to procuring other insurance was ever given by appellant or by its authority, and alleging that McKinney was not the general agent of appellant, and had no power to give such consent.   Flint & Chamberlain, who had been the agents of the company, notified it a year or more before the issuance of this policy that they could not attend to the business, and would have to give up the agency at Waco.   To this Longcope, secretary of the company, replied that he would be pleased to have the benefit of their name as advertising agents, and requested that they would designate some reliable person who would do the work for the pay, and that Flint & Chamberlain need to be at no trouble except to sign papers as agents.   McKinney was thereupon appointed. Flint & Chamberlain still remained agents, but McKinney was to do the work and correspond directly with the company, to save F. & C. trouble, as far as possible.

On the tenth of February, 1871, appellees procured on their goods in Waco additional insurance, in the Liverpool and London Globe Insurance Company, for four thousand dollars.   McKinney testified that he signed the paper above referred to, having reference to additional insurance, and after being notified that such insurance had been obtained, believed that he wrote to his company, saying, "No. 12 has additional insurance; what are your orders?" or to that effect.

McKinney also testified that when Cohen told him that additional insurance had been obtained, he (McKinney) informed him that he would refer the matter to the home office for instructions, and thereupon Cohen asked his opinion as to what the company would do.   It appears

from the testimony of one of the appellees that he knew of no other agency for appellant in Waco than McKinney.

McKinney also testified that he was not the agent of the appellants, though he corresponded directly with the company to save circuity of reporting business to Flint & Chamberlain, and they to the company; that he kept policies in blank, signed by the president and secretary, and that he made to the company monthly returns, embracing an account-current and an abstract of policies issued, none of which were signed, but the name of Flint & Chamberlain written in the heading. Their receipt was always acknowledged.

Longcope testified that the correspondence of the company was mostly had with McKinney; that he made monthly reports and held blank policies; but that no knowledge of additional insurance by appellees was had by the home office until after the fire.

The court gave to the jury, among others, the following instructions, viz. :

"4. A principal is liable for the acts of his agents done within the scope of his employment. A general agent, notwithstanding private instructions, may, within the limits of his agency, bind his principal, unless the person dealing with the agent knew of the instructions. A particular agent (by which is meant one authorized to do one or more special things) binds his principal only so far as he pursues his authority. The rule is, as to the public, that the authority of a general agent may be regarded by them as measured by the usual extent of his general employment; but, as to acts of particular or special agents, the rule is different; a principal may well say to one who dealt with an agent for a particular purpose (special agent), it was your business to first ascertain for yourself the character and extent of his agency.

" By accepting the policy sued on, plaintiffs are bound to know of the terms and restrictions therein contained.

"5. As to the nature and extent or limitations on the authority of McKinney, you are to find, from all the evidence before you, taken together and carefully compared. If, from the evidence, you are satisfied that he (McKinney) had the authority to act as the general agent of defendant company, and that, within the scope of such agency, he was authorized to receive notice of additional insurance in other companies, and did, in fact, receive such notice, then such notice was notice to the defendant.

'If, from the evidence, you find that McKinney's agency was only to procure risks and take premiums, and then deliver policies, his agency would, in that event, be a particular, as contradistinguished from a general, agency; and, in that case, his authority would not extend to waiving any of the terms of the policy.

"It is the duty of the holder of a policy of insurance to inform the company or its agent of any change of the status of the thing or risk; in like manner, it is his duty, within a reasonable time, to duly notify the company in which the first policy was taken out of any additional security by additional insurance, in order that said company may inquire into the solvency and standing of the companies, which, in case of loss, must share such loss.

"7.    Where it is in evidence that the insured obtained further insurance in other companies contrary to the stipulations of policy sued on, such policy was vitiated.

"By the terms of the policy sued on, consent in writing on the policy itself is requisite ; but if such consent in writing were in fact given by the defendant company, or by some agent who had the authority to give such written consent, and if plaintiffs, after obtaining additional insurance in other companies, they having previously notified the agent, who, according to the terms of his agency, was

charged with the duty of receiving such notice, then such written consent is binding upon the company; but the burden of proof is upon plaintiffs, and plaintiffs must satisfy the jury by proof that McKinney did give the written consent, after he was informed of the amount of additional insurance, the company in which such additional insurance was so obtained ; and furthermore, plaintiffs must prove that McKinney had the authority to give such consent. No presumption of such authority arises, but such an authority must be proved by plaintiffs."

The following charges, asked by appellees, were given by the court, to-wit:

"1. That the matter of McKinney being the agent of defendants, is a question of fact for them to determine from the testimony, and in aid of their investigation they are instructed that an agent may be created by long acquiescence on the part of the principal, with knowledge of his acts as agent for said principal, as well as by express appointment; and that if by express agreement it is so arranged between parties that one shall be advertised as the agent, but that another shall actually do the business, and this third person does transact the business, and becomes known as the agent of the principal by transacting their said business, then the said third person is their agent, and the principal is estopped from denying it as to those who have acquired rights against said principal because of the acts of said agent.

"2. A corporation cannot affirm an act of its agent in part, and disaffirm as to the residue. And the defendants herein are not to be allowed to avail themselves of the benefits of McKinney's acts, wherein they enure to their benefit, and to ignore and disaffirm the acts of said McKinney when they may operate to their prejudice, provided he has acted within the scope of such agency.

"3. When there is no evidence of the written appoint-

ment of an agent, the fact and extent of his agency must be determined by what he testifies and did, and also by the acts of the company recognizing him. If either party must suffer from the mistake of an agent, it must be the party whose agent he is.

"4. If the plaintiffs procured the written permission of the agent to get other insurance, and the agent neglected to endorse the same on the policy, or inform the company, then the plaintiffs cannot be affected by such neglect.

"If such agent had authority to give the permission, which is a fact for the jury ; and thus qualified I give this charge in connection with the charges of the court.

"5. If the jury believe that the company have given its written consent to plaintiffs to get other insurance, and that such writing has been lost or mislaid by the agents of the defendants, and without any fault upon the part of plaintiffs, then the plaintiffs ought not to suffer thereby."

Verdict and judgment for appellees.

*Gray & Botts*, for appellant.—We do not, and never have at any time, contended that McKinney's acts were not valid as an agent of any character. The company has never denied his acts as a special agent under Flint & Chamberlain, who were also special agents, to receive applications, take premiums and risks. No such denial was made before or after suit. But the issue was, whether he had general power, or had acted as general agent, or agent of any sort, to consent to additional insurance, which was recognized by appellant. That was the first issue, and upon that we say the testimony was not only insufficient, but the verdict was found without evidence to support it, and palpably against the evidence introduced and relied on by appellees.

Take all the evidence together, and there is no ground for the pretense that McKinney was general agent, or agent of any sort, authorized to consent to other insurance, nor that appellees ever had reason so to suppose, or that they ever acted on such belief. Yet the court charged the jury in such a general and special mode on that subject, that they could not help thinking that the judge thought there was strong evidence tending to that conclusion.

A verdict found without evidence, or palpably against evidence, will not be allowed to stand in this court. (Kellum v. Smith, 18 Texas, 849–850.) The same doctrine is held in Green v. Hill, 4 Texas, 465; and Shropshire v. Doxey, 25 Texas, 127.

The very language of Justice Wheeler, as to insufficiency of proof of fraud to support a verdict, may be used as to the want of evidence of agency of McKinney in this case. We say then there was error in the court, both in submitting that issue to the jury in the general and loose manner it did, and also in refusing the new trial.

It will not do to answer that the court gave the charges asked on this question by appellant, contradictory to those given *mero motu*, and also specially at request of appellees, nor on any other question where contradictory charges were given. Such contradictions do not give the law, which is the rule of action for the jury, but only give a conglomeration of inconsistencies, from which the jury are to select by lot, perhaps, or, at best, by exercising their judgment, which was to be taken as law. This of itself was error.

"The court must instruct the jury as to the legal effect of evidence," when it is documentary. (San Antonio v. Lewis, 9 Texas, 71; Weir v. McKee, 25 Texas, Sup., 31; 1 Bouvier Law Dict., title Construction, § 8.)

"A charge which is in the alternative, and allowed the jury to presume the grant merely because one of the parties claimed the land, is erroneous." (Grimes v. Bastrop, 26 Texas, 314.)

The general doctrine is assumed and discussed in Howard v. Davis, 6 Texas, 180 ; Dunlap v. Wright, 11 Texas, 602.

The court then should have plainly and positively instructed the jury whether the alleged consent, written in pencil, on an insurance agent's advertising card, was the formal, deliberate and binding consent of the company, or of its supposed agent, required by the policy. Was it, indeed, anything approaching such consent, or even a substitute for that consent required? That patent medicine card of "Massie & Herndon, Insurance Agents, Galveston, Texas," when endorsed by McKinney "in pencil," figures somewhat in this case as a lamb of sacrifice for the sins of the immaculate appellees—a scapegoat by which they seek to be saved from all losses, real or pretended, and to cast them on a corporation whose real officers or agents never heard of it!

If, then, McKinney was agent, for any purpose, is it not manifest that he did not consent, by that card? It seems to us idle to pretend such a construction, and we will not waste further time on the question. Yet the judge gravely submits the question of written consent, actually given, to the jury, both in his general and special charges ; and in one of them goes so far as to suppose there was evidence of the loss or destruction of the written consent! Not only so, but that it had been lost by appellant's agent, Flint, and therefore that the appellees should not be the sufferers! Was there ever a charge given more grossly inapplicable to facts, or so sublimely persistent in assuming that there was evidence of the written consent required by the policy—the most material fact?

If we are right in this conclusion, it is needless to go further; for the jury must have been misled by the charge on this material point ; and this is error, for which the verdict must be set aside. So say all the authorities, without contradiction. (Blanchet v. Davis, 3 Texas, 142 ; Bailey v. Mills, 27 Texas, 438 ; Ponton v. Ballard, 24 Texas, 621 ; Hollingsworth v. Holshousen, 17 Texas, 47, 48, and cases there cited ; Chandler v. Fulton, 10 Texas, 22 ; Spence v. Onstott, 3 Texas, 147 ; Hancock v. Horan, 15 Texas, 511 ; Love v. Wyatt, 19 Texas, 316.)

We say, then, that there is not only no sufficient evidence to support the verdict on this subject, but that it was all the other way, clearly against the allegation of consent. Yet the learned court saw fit, by its charge and by giving special charges for appellees, to leave that question to the jury, in a manner calculated to make them believe that the judge cosidered the evidence sufficient to be left to their decision.

Where the testimony is all one way on an issue, it is error for the court to submit it hypothetically to the jury.

" A charge must not be in the abstract when not warranted by the evidence." (Thompson v. Shannon, 9 Texas, 537 ; McGreal v. Wilson, Id., 429 ; Wheeler v. Moody, Id., 372 ; Davis v. Loftin, 6 Id., 492 ; Hancock v. Horan, 15 Id., 507 ; Love v. Wyatt, 19 Id., 312 ; Hatch v. Garza, 22 Id., 187.

We grant it freely, that where a company allows a person to act for it as agent and recognizes his acts, holding himself out to the world as such, the company will be bound by his acts as such agent. This is the general principle asserted in all the books, no less than in the authorities of appellees. That is the way in which they have heretofore argued the case ; but that is not the real question involved. The real question is this: 1. Can a special agent, known to be such, who is only authorized

to take risks and attend to such matters as relate to that branch of the business, give consent to additional insurance in another company? We say not, and defy the production of authority to the contrary.

"The act of an agent beyond the scope of his authority is not binding on the company." (Angell & Ames on Corp., §§ 297–299; Brooklyn Gravel Road Company v. Slaughter, 33 Ind., 185.)

An agent to receive applications, etc., is not authorized to accept notice of over-insurance or waive consequences of it. (Mitchell v. Lycoming Ins. Co., 51 Penn. St., 402; and Ins. Digest Agent, 361.)

Verbal notice of second insurance to an agent is not sufficient, where the policy required indorsement in writing. (Hutchinson v. Western Ins. Co., 21 Mo., 97; Fowler v. Agawam Mut. Ins. Co., 9 Cush., 470.)

Second insurance without consent avoids the first policy. (Insurance Co. v. Stockbower, 26 Penn. State, 199; Blanchard v. Atlantic Ins. Co., 33 N. Hamp., 9; Kimball v. Howard Fire Ins. Co., 8 Gray, 33; Hygum v. Etna Ins. Co., 11 Iowa, 21; Bigler v. New York Central Ins. Co., 20 Barb., 635; Battacle v. Merchants' Ins. Co. of N. O., 3 Robinson, 384.)

Equity requires him to let that stand as legally done, which, but for his acts or omissions of duty, would not have been done. The innocent party should not be allowed to suffer wrong.

Such is the doctrine of Herman on Estoppel, and of Bigelow on Estoppel, where they treat of *estoppel in pais*. And such is the doctrine so admirably stated by Lord Denman, in Pickard v. Sears, 33 Eng. C. L. R., 117, cited by Justice Lipscomb, in Love v. Barber, 17 Texas, 318; see, also, 2 Smith's Leading Cases, 7th Am. Ed., pp. 711–716; Duchess of Kingston's case, in notes by Hare & Wallace, where the court will find the whole sub-

ject more clearly, succinctly and logically treated than in either of the works on estoppel above cited.

We respectfully submit that in no respect have the essential facts been made to appear which would create an equitable estoppel, or any of the requisite grounds of that doctrine.

*Stewart & Barziza*, for appellees.—If Flint & Chamberlain considered themselves as the responsible agents of appellants, they must have a very loose way of doing business, because one of them did not know anything about the policy sued on, and the other did not care, as he says he signed the policy just as Mr. McKinney handed it to him. It will not do for the appellants, a public company chartered by the State, with extraordinary powers, to set up before the people a man of straw, and after inducing the public to deal with him as real, then to turn around and ignore his existence. An insursurance company establishing a local agency must be held responsible to the parties with whom they transact business for the acts and transactions of the agent, within the scope of his employment, as if they proceeded from the principal. (Beebee v. Hartford Ins. Co., 25 Conn., 51; The Lycoming Ins. Co. v. Schollenberger, 8 Wright, 259; Beal v. The Park Ins. Co., 16 Wis., 241; Davenport v. Peoria Ins. Co., 17 Iowa, 276; Savings Bank v. Charter Oak Ins. Co., 31 Conn., 517; Horwitz v. Equitable Ins. Co., 40 Missouri, 557; Ayres v. Hartford Ins. Co., 17 Iowa, 176; The Howard Ins. Co. v. Bruner, 11 Harris, 50.)

The books all agree that not only is a written consent not required to be endorsed on the policy, but they agree that no written consent is absolutely requisite at all upon the ground of estoppel. (Herman on Estoppel, Secs. 539, 541, 548, 451, 555.)

From a leading case (12 Harris, 320) cited in Flanders

on Fire Insurance, p. 192, Chief Justice Woodward says: "No company has a right to select and send out agents to solicit patronage and business for its benefit, and then to saddle their blunders upon its customers."

As to the powers of appellants' agent at Waco, there is no evidence of any restriction of such powers, or of any special agency with which he was charged; and if he was held out as the general agent of appellants, with private instructions as to his powers, the public or a third party are not bound by such private instructions, unless notice is brought to them. (See Digest of Ins. Dec., p. 34, Secs. 7 and 9; p. 37, Sec. 20; p. 39, Sec. 28; p. 41, Secs. 36–7; p. 44, Sec. 43; p. 45, Secs. 46–7–8; p. 46, Sec. 52; p. 47, Sec. 54; p. 49, Sec. 63; p. 50, Secs. 64–5; Flanders on Fire Insurance, p. 157.)

And that McKinney was and ought to be deemed the agent of appellants, we refer the court to the express opinion of Mr. Justice Miller, 3 Wallace.

As to the powers of an insurance agent, we refer the court to the following authorities in Flanders on Fire Insurance, to-wit: pp. 42, 143, 51, 52, 56, 57, 157, 158, 159, 160, 164 and note, 165, 166, 170, 199.

Coming down as late as the year 1869, after the law upon fire insurance had been fully discussed and passed upon by courts in England and the United States, we find a case of Carrugi v. The Atlantic Fire Insurance Company, from 40 Georgia Reports, 135, and set out in 2 American Reports, 567, in which the identical point was · made that is attempted to be made in this case.

It matters little to these appellees what private instructions were given their agents by appellant, or what powers the rules and by-laws of the company conferred upon an agent, because the appellees acted in good faith with the agent and representative of the company; and, in the language of a learned judge, quoted on page 199, in Flan-

ders on Fire Insurance, "It would, in my opinion, be little less than legalized robbery to allow these insurance companies to escape from liability upon the merest technicality possible, and that too, when created by their own by-laws, which remain a sealed book to ninety-nine out of every hundred persons insured."

It may be contended that the home office did not receive notice of additional insurance; but the appellees had nothing to do with that; they dealt with the company through its representative at Waco, and if such company at Waco failed to do its duty to itself, then surely appellees ought not to be blamed. If no fire had happened before the expiration of the policy sued on, we do not imagine that the appellant, in the fullness of its honesty and bounty, would have offered to refund to appellees any proportionate share of the premium paid, when they had learned at the secretary's office that the appellees had procured additional insurance. It will do very well, at this stage of the case, for the president and secretary to say they would "possibly" have canceled appellees' policy if they had been directly notified of the other insurance!

The truth is, according to the whole record, that the appellant is seeking to shield itself behind a mere technicality, and one, too, which the courts have always disfavored. In view of the whole case, we confidently ask the court to affirm the judgment of the court below, as there has been no error of which appellant can rightfully complain.

WALKER, J.—This is an action brought to recover on a policy of insurance for $6000, dated August 13, 1870. The appellees insured their goods in the town of Waco, in the company of the appellant, at a four per cent. gold premium. Stock consisted of clothing, boots, shoes and

dry goods.   The insurance was under a continuing policy for one year.

As a part of the contract for insurance it is stipulated, "that if the insured shall have, or shall hereafter make, any other insurance on the property hereby insured, or any part thereof, without the consent of the company written hereon," then the policy is to be void.   This provision is customary in fire insurance policies, and the question it presents in this case is by no means new to the courts.   But the facts are peculiar.

The appellant (defendant below) made two defenses to the payment of the policy.

A fire having occurred in April, 1871, by which the whole of the appellees' stock, amounting to some $12,000 or $13,000, was consumed, it was attempted in the court below to show that the appellees were responsible for the fire, and that the loss was occasioned through their fraud. That defense however is abandoned in this court, but it is here insisted, as it was below, that the policy is void by reason of the appellees having obtained an additional insurance on their stock of $4000 without the consent of the appellant, as stipulated in the policy.   To this it is replied and insisted, that the necessary steps were taken, and the consent of the company virtually obtained to the additional insurance.

There is not much conflict in the evidence, and the main facts appear to be about these: Previous to the thirteenth of August, 1870, Flint & Chamberlain were the local agents of the appellant at Waco.   Their business not permitting them to give the necessary attention to the agency, they had notified the managing officers of the company of a desire to surrender the agency.   They were however requested by the officers of the company to refer them to a suitable agent who would "do the work for the pay;" and further, that they would allow

their names still to be used as the agents of the company, perhaps upon the ground that they were responsible business men and bankers in the town of Waco.

E. A. McKinney was recommended, and appears to have been thenceforward the active business agent of the company at Waco; and it is easily gathered from the evidence that no insurance was solicited, policies taken, reports made, or any other act of agency performed by any one acting for the company, in the town of Waco, except by E. A. McKinney.

Mr. McKinney states in his depositions that he corresponded with the company; made regular reports from his agency; received letters and communications from the secretary of the company. He filled out the policy in this instance, received the premium, and paid it over to the company, though it is true the names of Flint & Chamberlain are written on the margin of the policy, as agents. Yet it is insisted by the company that McKinney was only a special agent, with limited powers, not extending to the granting of the privilege to policy holders of taking additional insurance.

We confess there may be some difficulty in determining what was the precise relation of McKinney to the insurance company—whether he was but a *sub-modo* or special agent, without the necessary power of granting the license himself; yet we think, under proper instruction as to the law of agency, it was a question of fact for the jury to determine, how far McKinney was the agent of the company.

Lindenthal, one of the appellees, states that all the transactions in regard to the policy herein sued on were had with McKinney; that he paid him the premium; that he knew of no other agency in Waco for the appellant.

Regarding the status of McKinney as a question of fact, and considering him the agent of the company for

the ordinary transaction of its business at Waco, how does his conduct affect the law of this case? It is clear, from the evidence, that before the second insurance was taken in the London Globe Company, Lyons, the senior partner of appellees' firm, called upon McKinney, with the request that his firm might be allowed to make additional insurance on their goods; and we gather both from Lyons' and McKinney's evidence, that the matter was distinctly spoken of and understood by the perties; and, as a result of the interview, McKinney took a business card of Messrs. Massie & Herndon, insurance agents at Galveston, and wrote on the back of the card the following words and figures:

"Frame range; now insured for $6000, at four per cent.; average stock $12,000. Lyons *will select company*, and *I will make application.*    McKINNEY."

This memorandum is not dated; but by the testimony of Lyons, it was written about the nineteenth of January, 1871, and was intended to signify the assent of McKinney, that if Lyons would select a company in which to make additional insurance, McKinney would make the application for it.

Lyons obtained the additional insurance while in the city of New York, and it is furthermore testified by McKinney that Mr. Cohen, a member of the appellees' firm, informed him in February, 1871, that they had obtained an additional insurance on their goods; that he did not make any objection, but, as he believes, he informed the company—though upon this point the evidence is somewhat doubtful. There, however, can be no doubt that it was his duty to inform his company of so important a matter, and if he did—the fire not occurring until the eighth of April, 1871—the company had abundant time to act in the premises, and if the officers considered that the second insurance had been obtained without the

proper consent of the company, and that their policy was made void thereby, they should have so informed the appellees.

But it is insisted that the judgment of the District Court should be set aside for errors in the charge to the jury; that the charge is erroneous; that it improperly deals in abstractions and hypothetical cases.

We have examined this charge, and are not prepared, in our judgment, so to pronounce upon it. There is evidence in the case to which every part of the charge, as far as it could do good or harm, applies, and we find no misstatement of the law in it. Doubtless the charge might have been more brief, and quite as favorable to the appellees as it was. We admit the authorities to some extent hold that mere notice to an agent, without assent, of an intention to procure subsequent insurance, is not sufficient. (Kimball v. Howard Fire Insurance Company, 8 Gray, 33; Miller v. Hamilton Fire Insurance Company, 5 Duer, 101; Worcester Bank v. Hartford Fire Insurance Company, 11 Cushing, 265.) And it has also been held that mere verbal consent, when written consent is required by the by-laws of a mutual company, is not sufficient, even where the policy itself is silent on the subject. (Hale v. Mechanics' Mutual Insurance Company, 6 Gray, 169.) And in Dietz v. The Mound City Insurance Company, 38 Mo., 85, the court say "that stipulations as to consent, for further insurance must be strictly complied with;" and it is further held, in some cases, that parol evidence of consent by the company is not sufficient where, by the policy, written consent is required.

But this question is left in some doubt; other courts have treated it differently, and we will proceed to refer to some of the arguments and adjudicated cases on the other side. Flanders, in his late valuable treatise on the law of fire insurance, says:

"If the insurer has actual knowledge of the existence of other insurance at the time he issues his policy, he will not be permitted to set up that fact to evade a liability which he has deliberately assumed." (p. 42.)

"And if the insurer, at the time he obtains his policy, informed the agent of the insurer that he already had other insurance, he will be entitled to recover in case of loss, notwithstanding the agent neglected to enter it in writing on the policy." (Page 43; see also, N. E. Fire and Mar. Ins. Co., 38 Ill., 166; Rowley v. The Empire Ins. Co., 40 New York, 557; Tallman v. The Atlantic Ins. Co., 40 New York, 87; Washington Ins. Co. v. Davidson, 40 New York.)

In the case of Howitz v. The Equitable Insurance Company (40 Mo.), the charter of the company contained a clause to the effect, "that if insurance on any house shall be and subsist in said company, or in any other company, at the same time, the insurance made in and by this company shall be deemed and become void, unless such double insurance subsist with the consent of the directors, signified by endorsement on the back of the policy, signed by the president and secretary."

The policy also in this case, like the one under consideration, contained a clause which provided, that if the insured should procure any other insurance, and should not, with all reasonable diligence, give notice to the company, and have the same endorsed on the policy, or otherwise acknowledged in writing, the policy should cease and be of no further effect. The application was for insurance to the amount of ten thousand dollars.

The agent of the company informed the applicant that by the rules of the company it could not take but five thousand dollars on any one risk, but, at the same time, offered to procure insurance for the remaining five thousand dollars. This the agent accomplished the next day

and notified the insured, who subsequently paid the premium and received his policy.

On this state of facts it was held to have been the duty of the company, upon being notified by its own agent of the additional insurance, to have endorsed the same upon the plaintiff's policy, or to have notified him of the refusal of the risk; and that having failed to do so, it was estopped from setting up as a defense the failure to have such additional insurance endorsed upon the policy. (Flanders, pp. 51, 52.)

And so we think in the case at bar. If the company were informed by McKinney that additional insurance had been effected on the appellee's goods, and the consent of the party was not given and endorsed on the policy, the policy should have been at once vacated, and the appellees notified.

Flanders, (pages 56, 57) says, "that when the contract of insurance is rendered void by reason of notice *not* being given of other insurance, and having the same mentioned in or endorsed upon the policy, it may be revived and rendered binding by subsequent acts of the insurers, manifesting an intention to treat it as a valid and subsisting contract, notwithstanding the forfeiture. And this right of waiver is not curtailed by an express provision of the policy that none of its conditions can be waived except in writing, signed by the secretary."

It is competent for the parties to rescind or modify this provision by a valid agreement, even by parol, and an executed agreement to renew the policy clearly has that effect. (See Carrol v. Charter Oak Insurance Co., 38 Barbour, 402; Dearborne v. Cross, 7 Cowen, 48; Carrol v. Charter Oak Insurance Co., 40 Barbour, 292.)

The case of Carrugi v. The Atlantic Fire Insurance Co., 40 Georgia, 135, is a case very similar to the one at bar, and the court hold in a very able opinion that "Where a

policy of insurance contained a clause that 'if any prior or subsequent insurance has been, or may hereafter be, made upon said property, and not consented to by said company in writing, this policy shall be null and void,' and the policy holder notified the agents of the company that he would get additional insurance and the agent consented, and the insured acted upon that consent and purchased the insurance, the first policy is not void, although the consent of the agent was not in writing.

"An agent of an insurance company, authorized to make and revoke contracts of insurance, is the proper person to give consent to the procuring of new insurance, unless his powers be restricted by the company in this respect, and the insured have notice of the restriction.

"Notice of an intention to get additional insurance and consent thereto by the agent of the company is sufficient, under the clause in this policy, to justify the insured in procuring the new insurance, there being no fraud. But if, after this new insurance is effected, the original policy be renewed, and no other notice in fact be given to the agent of the new insurance, the insurance will or will not be valid, according as, from all the facts and the conduct of both the insured and the agent, the jury shall believe it was or was not the intent of the insured to commit a fraud by over-insuring his property."

In the Insurance Company v. Wilkinson, 13 Wallace, 222, in the opinion by Justice Miller, the court hold: "That insurance companies, who do business by agencies at a distance from their principal places of business, are responsible for the acts of their agents within the general scope of the business with which they are entrusted, and no limitation upon the authority of the agent will be binding on the parties with whom he deals unless such limitation be brought to their knowledge."

If, then, there was any limitation on the authority of

McKinney to act as agent of the company in all matters pertinent to its business at Waco, the evidence does not show that the appellees had any knowledge whatever of the limitation, but, on the contrary, they deny that knowledge in their depositions.

Flanders also lays down the rule, "That a general agent for effecting insurance on behalf of the company has full power to insure, to renew, and to receive notice of other insurance," and cites Carrol v. Charter Oak Ins. Co., 40 Barbour, 292 ; Sheldon v. Conn. Mut. Life Ins. Co., 25 Conn., 207 ; New York Central Ins. Co. v. Nat. Pro. Ins. Co., 20 Barbour, 469 ; and Peck v. The New London Mut. Ins. Co., 22 Conn., 575 ; and the note on page 164 cites Farmers' M. F. Ins. Co. v. Marshall, 29 Vt.; and Mound City Mut. Fire and Marine Ins. Co. v. Curran, 42 Mo., 374, to the doctrine that the authority of a general agent is restricted to the range of his employment, and the acts and representations which an ordinary person might expect of him, and that he would be authorized to do or to make on behalf of his principal ; and it is left as a question of fact for the jury, whether a given representation was really calculated to impose upon a careful and prudent man.

We think this question properly arose upon McKinney's memorandum on the back of Massie & Herndon's card.

It is in cases like this that Justice Miller says, "The courts of law and equity in modern times apply the doctrine of equitable estoppels to companies chargeable with notice through their agents ; and the principle is, that where one party has, by his representations or his conduct, induced the other party in a transaction to give him an advantage, which it would be against equity and good conscience for him to assert, he would not, in a court of justice, be permitted to avail himself of that advantage."

These principles of the law were stated in the charge of the court below, with some unnecessary qualifications, which rendered the charge quite as favorable to the appellant as the current authorities would justify. But we think the jury understood the law of the case from the charge of the court, and that the verdict was quite consistent with the law and the facts; therefore, the judgment is affirmed.

AFFIRMED.