HELEN L. GARLAND

v.

THE INSURANCE COMPANY OF NORTH AMERICA.

1. ASSIGNMENT OF INSURANCE POLICY.—By an alienation of the property insured the contract of insurance is terminated, and nothing remains to the insured but a right to the return of the unearned premium, and an assignee of the policy can obtain no greater rights than his assignor possessed. The assignment of itself vests no right to indemnity in the assignee.

2. ASSENT OF INSURER TO ASSIGNMENT OF POLICY—EFFECT.—Where a policy of insurance is assigned by the insured to the purchaser of the property, and the insurance company indorses on the policy its consent to such assign-

ment, it thereby consummates a new contract of insurance with the assignee, the unearned premium in the hands of the company forming the consideration.

3. CONDITIONS IN POLICY—PREMISES BECOMING VACANT.—Where a policy of insurance contains a condition of forfeiture in case the premises should become vacant, and the company consents to an assignment of the policy, it having notice at the time of such assignment that the premises were vacant, and a loss occurs, the company will not be permitted to defend against the loss by setting up a condition by which the policy is to be void in case the premises become vacant.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding. Opinion filed January 4, 1882.

On the 23d day of November, 1876, the Insurance Company of North America issued to Maria G. McConnell, a policy of insurance against fire, in the sum of $3,000, on her dwelling house, situated in Winetka, Cook county, Ill. for a term commencing Nov. 23, 1876, and expiring February 16, 1880, the premium for the entire term being paid in advance. At the date of the policy, the premises insured were incumbered by a deed of trust, executed by said Maria G. McConnell and George M. McConnell, her husband, to Lyman Baird, as trustee, to secure the payment of a promissory note, for the principal sum of $1,200, and various interest notes. The policy contained the following provision in relation to the deed of trust:

"Loss, if any, payable to Lyman Baird, trustee, or his successors in trust. It is hereby agreed that this insurance, as to the interest of said trustee, or successors only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the property insured, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy. * * * It is also agreed, that whenever the company shall pay the holder of any such notes or bonds, any sum for loss under this policy, and shall claim that, as to the morgagor or owner, no liability therefor existed, it shall at once be legally subrogated to all the rights of said holder, under all the securities held as collateral to the debt, to the extent of such payment, or at its option, may pay to such holder the whole principal due, or to grow due, on the mortgage, with interest,

and shall thereupon receive a full assignment and transfer of the securities held as collateral to the debt, but no such subrogation shall impair the right of the holder of such securities, to recover the full amount of his claim."

The policy also, amongst other conditions, contained the following:

"If the property hereby insured, or an undivided interest therein, shall be purchased by a third party, this policy may be assigned to such purchaser, or to the parties in interest, provided the company shall consent in writing hereon, otherwise this insurance shall cease from the date of such purchase. All other insurance on said property, or any part thereof, either prior or subsequent, must be made known to this company, and consent endorsed hereon, or this policy shall be void. If during the continuance of this insurance, the risk shall be increased by any means whatever, with the knowledge of the assured, and the assured shall neglect to notify the company thereof, and have the same endorsed hereon, paying therefor such additional premium as shall be demanded, this policy shall thereupon cease. And if the assured shall allow the building herein insured to become vacant or unoccupied, and so remain; or if a mill or manufactory, to stand idle, or shall mortgage the property after procuring this insurance, or do any other act by which a third party shall acquire an insurable interest in the subject insured; in each and every such case, unless the consent of this company be endorsed hereon, this policy shall be null and void." Also,

"This insurance may be terminated at any time at the request of the insured, in which case the company may retain the customary short rates for the time the policy has been in force. The insurance may also be at any time terminated at the option of the company, on giving notice to that effect, and refunding a ratable proportion of the premium, for the unexpired term of the policy."

On the 7th day of December, 1877, Maria G. McConnell and husband, conveyed the premises insured to Helen L. Garland, and a few days afterwards the McConnells moved out of the house, leaving it vacant and unoccupied. On the

23d day of January, 1878, John C. Garland, the husband of Helen L. Garland, having learned that the McConnells had moved out, went to the office of C. H. Case, the agent of the insurance company who issued the policy, for the purpose of having the insurance transferred to Mrs. Garland. He there met one of Mr. Case's clerks, and applied to him to have the insurance transferred, and, at the same time, as he claims, notified said clerk that the former occupant had moved out, leaving the premises vacant. Not having the policy with him, he was directed to go and procure it, and have Mrs. McConnell assign it to Mrs. Garland. This he did, and returned with the policy duly assigned, and thereupon the clerk wrote on the policy the company's consent to the assignment, and took it into an adjoining room where Mr. Case was, and obtained his signature thereto, and brought it back and delivered it to Garland.

The building insured remained vacant and unoccupied after the assignment of the policy until September 25, 1879, on which day it was totally destroyed by fire. During most of this time the property was in the hands of one Morris J. Moth, as agent of Mrs. Garland, for the purpose of renting, said Moth being also at the same time a sub-agent or employe of Case in his insurance business. The evidence shows that proofs of loss were duly furnished by Mrs. Garland to the insurance company; also, that the building, at the time of the loss, was worth the full amount insured thereon.

The insurance company afterwards paid Lyman Baird, the trustee, the sum of $1,254, being the amount, principal and interest, due on the deed of trust, and took an assignment to itself of the deed of trust and notes, and afterwards, claiming that, as to the owner of the property, the policy was void, by reason of the premises being permitted to be and remain vacant and unoccupied without the consent of the company, contrary to the condition of the policy, brought its bill in chancery against Helen L. Garland and others, praying for a foreclosure of the deed of trust, and a sale of the mortgaged premises. Helen L. Garland answered said bill, and filed her cross-bill, in which she asserted the validity of the policy, and prayed for an

accounting as to the amount due her from the insurance company for said loss, after deducting the amount paid to Baird, and for a decree for the payment to her of the amount so found due, and for a surrender to her of said deed of trust and notes for cancellation.

The principal controversy in the case arises upon the question of notice to the insurance company that the premises were vacant, and of a waiver by the company of the condition of the policy relating to that subject, at the time its consent was given to the assignment of the policy.

On these questions the insurance company called three witnesses, viz.: Case, the agent, and Robinson and Graves, two clerks in Case's office. Neither of these witnesses pretend to have any recollection of the occasion, or of anything that transpired at the time. Robinson, whose duty it was to fill up and register policies, and do other clerical work, and in whose handwriting the endorsement of consent to the assignment appears to be filled up, disclaims all recollection of the circumstances, but infers that he filled the blank under the direction of Graves or Case. He does not remember that anything was said about the premises being vacant, but testifies that when consent to a vacancy was given it was the practice of the office to endorse it on the policy.

Graves, who was Case's confidential clerk and cashier, testifies that he has no recollection whatever of the transaction, or of any statement by Garland that the premises were vacant, and that he believes that Garland made no such statement; that his, witness', duty and practice, on ascertaining that premises insured were vacant, was to cancel the policy; that if Mr. Case was in the city, he represented the matter to him; if not, he would cancel the policy at all hazards; that so invariable was this practice, that, had Mr. Garland notified witness that his house was vacant, witness would have tendered him the return premium in cancellation of the policy, and retain the policy, unless otherwise instructed by Mr. Case.

Case testifies that he signed the consent to the assignment, but does not specially recollect the circumstance. Graves was the clerk who waited on customers at that time, but witness

cannot state positively who handed him the policy for his signature. It might have been Robinson or Graves. Witness had no knowledge that the premises were vacant until after the fire; that he had laid down no rule in his office for the government of his employes in respect to buildings which should become vacant; that circumstances change, and there was no rule that would apply to all cases; that if a case of vacancy came to the knowledge of an employe, it would be referred to witness; that he inferred that no such question was referred to him in this case, from the fact that if it had been he would have cancelled the policy.

J. L. Holden, the company's adjuster, testifies that some three or four weeks after the receipt of proofs of loss, Mr. Garland came to his office and asked what had been done, and was told that the company had paid the trustee, but denied liability so far as Mrs. Garland was concerned. He wanted to know on what ground, and the witness replied that it was because of the long vacancy rendering the policy void; that Garland then said that the company had notice that the premises were vacant, and on being asked how, replied through its agent, Mr. Moth.

Mr. Garland's testimony is as follows: "The company had notice that the house was vacant. After the purchase of the property was made from McConnell, and he had moved out of the house, I called at the office of Mr. Case, the agent of the company whose name is signed to this policy, to have the insurance transferred from Mrs. McConnell to Mrs. Garland. The clerk at the desk told me that I would be obliged to bring the policy before the insurance could be transferred on their books. I replied to the clerk that it was late in the afternoon, and I had just got knowledge that the house was vacant and desired to have the transfer made. The clerk remarked that they could put it on their books, but it would not be legal without I had the policy with Mrs. McConnell's signature attached; and if the house was vacant, that I had better attend to that part of the business, because it would not amount to anything if the house was destroyed—they would not be liable for the loss. I then went out to find McConnell, and at last

Garland v. Ins. Co. of N. A.

found him and learned that the policy was at Baird & Bradley's. I got it and went back to McConnell's office and obtained his wife's signature, and took the policy to Mr. Case's office, and they wrote on it their transfer. The policy was then taken into a room back of the counter, where Mr. Case was sitting, and was signed and brought back and handed to me. I notified the clerk in Mr. Case's office that the property was vacant before the permission for the transfer of the insurance was endorsed by Mr. Case, and before I had ever seen the policy. The clerk was behind the counter, and I suppose Mr. Case sat within fifteen feet from the counter. I waited until he had signed it and brought me the policy. I told the clerk that I wanted the transfer put on the books that day, because the property was vacant, and it had just come to my knowledge that the McConnells had moved out of it and moved into the city. That was perhaps two hours before the endorsement was made by Mr. Case."

On the hearing on pleading and proofs, the court entered a decree in favor of the insurance company, for a foreclosure of the deed of trust, and dismissed the cross-bill for want of equity. Mrs. Garland brings the record to this court by appeal, and assigns for error the entry of said decree.

Messrs. STEELE & JONES, for appellant; that the condition in the policy relating to vacancy of the premises, only rendered the policy voidable at the election of the insurer, cited N. E. F. & M. Ins. Co. v. Schettler, 38 Ill. 166; David v. Hartford Ins. Co. 13 Iowa, 69; Keenan v. Mo. State Mut. Ins. Co. 12 Iowa, 126; Bigler v. N. Y. Cent. Ins. Co. 22 N. Y. 402; Atlantic Ins. Co. v. Goodal, 35 N. H. 328; Carpenter v. Prov. Wash. Ins. Co. 16 Pet. 509; Coursen v. Penn. Ins. Co. 46 Pa. St. 323; Frost v. Saratoga Ins. Co. 5 Denio, 154; Clark v. Jones, 1 Denio, 516; Cartwright v. Gardner, 5 Cush. 281; Warner v. Peoria Ins. Co. 14 Wis. 323; Miner v. Phœnix Ins. Co. 27 Wis. 699; Com. Ins. Co. v. Spankneble, 52 Ill. 53; Viele v. Germania Ins. Co. 26 Iowa, 53; Ins. Co. v. Stockbower, 26 Pa. St. 199; P. F. &. M. Ins. Co. v. Hall, 12 Mich. 202.

Waiver of such condition need not be in writing, and such waiver may be shown by parol: Viele v. Germania Ins. Co. 26 Iowa, 9; 1 Greenleaf's Ev. § 302; 2 Phillips' Ev. 692; Fleming v. Gilbert, 3 Johns. 528; Merrill v. Ithaca, etc. R. R. Co. 16 Wend. 586.

As to what will amount to a waiver: Viele v. Germania Ins. Co. 26 Iowa, 9; North Berwick Co. v. Ins. Co. 52 Me. 336; Lycoming Ins. Co. v. Stockbower, 26 Pa. St. 199; Wing v. Harvey, 27 E. L. & E. 140; Frost v. Saratoga Mut. Ins. Co. 5 Denio, 154; Ames v. N. Y. Un. Ins. Co. 26 N. Y. 263; Little v. Market Fire Ins. Co. 28 N. Y. 184; N. Y. Ins. Co. v. Nat. Prot. Ins. Co. 20 Barb. 468; Boehen v. Williamsburg Ins Co. 35 N. Y. 131; Goit v. Nat. Pro. Ins. Co. 25 Barb. 189; Com. Ins. Co. v. Spankneble, 52 Ill. 53; Rathbone v. City Ins. Co. 31 Conn. 193; Buckbee v. U. S. Ins. & Trust Co. 18 Barb. 541; Franklin v. Atlantic Fire Ins. Co. 42 Me. 456; Columbia Ins. Co. v. Cooper, 50 Pa. St. 331; N. E. F. & M. Ins. Co. v. Schettler, 38 Ill. 166; P. M. & F. Ins. Co. v. Hall, 12 Mich. 202; Lycoming Ins. Co. v. Jackson, 33 Ill. 302; Lycoming Ins. Co. v. Barringer, 73 Ill. 230; Richardson v. Westchester F. Ins. Co. 15 Hun. 472.

No new consideration is necessary to support the waiver: Minn. v. Phœnix Co. 27 Wis. 698.

Notice to the agent of the insurer that the premises were vacant was notice to the company, and the consent to the assignment of the policy was a waiver of the condition: Devine v. Home Ins. Co. 32 Wis. 471; P. M. & F. Ins. Co. v. Hall, 12 Mich. 202; Campbell v. M. & F. Ins. Co. 37 N. H. 35; Marshall v. Columbian Mut. F. Ins. Co. 7 Foster, 157; Masters v. Madison Co. Mut. Ins. Co. 11 Barb. 624.

Messrs. MILLER, LEWIS & BERGEN, for appellee; that the condition in the policy being violated, the policy is void, cited Hartford Ins. Co. v. Walsh, 54 Ill. 164; N. A. F. Ins. Co. v. Zaenger 63 Ill. 464; Am. Ins. Co. v. Padfield, 60 Ill. 167.

BAILEY, J. Two questions are presented by this record, upon the solution of which the decision of the case must mainly depend, viz:

Garland v. Ins. Co. of N. A.

1.   Were the agents of the insurance company notified that the building insured was vacant and unoccupied at the time the company's consent was given to the assignment of the policy?

2.   Did said agents, at the time said consent was given, by their words or conduct, waive the condition of the policy by which it was to become void in case the building should become vacant and unoccupied, and so remain?

As to the first of these questions there is but little, if any difficulty.   John C. Garland, the appellant's husband, testifies positively that when he went to the office of Mr. Case, the company's agent, to obtain a transfer of the insurance to the appellant, he told the clerk with whom he did the business, that the former owner and occupant of the building had moved out, leaving it unoccupied, and that it was on account of the very fact that it was vacant, that he was anxious to have the assignment perfected that day.   His recollection of the transaction is apparently clear and circumstantial, and he relates what was said and done by all the parties concerned, with particularity and very much in detail.   On the other hand, the agents of the insurance company who testify, have no recollection of the occasion, or of anything that transpired.   That an interview of some kind took place between them and Garland, is rendered morally certain, by the fact that the endorsement on the policy is filled up in the handwriting of Robinson, the clerk, and bears the signature of Case, the agent.   But they seem to have no recollection even of having executed that writing.   So long as they have wholly forgotten the occurrence, their testimony that they do not remember the facts to which Garland deposes, is entitled to little if any weight.   Nor is it surprising that Garland should remember the occurrence distinctly, or that Case and his clerks should have forgotten it. With Garland it was the only transaction of the kind, and was a matter of considerable importance to his wife, for whom he was acting.   To Case and his clerks it was only a matter of daily routine, and was probably only one of many occurrences involving similar facts and circumstances.   It is true these witnesses attempt to state the rules and principles upon which

they were accustomed to act whenever it came to their knowledge that a building insured had become vacant, and from their usual course of business in that respect, attempt to infer or argue out the conclusion that they could not have received the information to which Garland testifies. It is sufficient to say that such inferences of the witnesses are not competent for any purpose, and cannot be considered as bearing upon the question under discussion.

One circumstance is related by witness, Holden, which merits a passing remark. It is, that after the loss, Garland, being asked by him how the company had knowledge of the vacancy of the building, answered that it was through the company's agent, Moth. It should be observed that Moth was an employe and sub-agent of Case in a part, if not all, his insurance business, and that at the time of this conversation Garland supposed, incorrectly though, it seems, that he was the company's agent. For about a year prior to the fire, Moth had been in custody of the insured premises, as the agent of Mrs. Garland, for the purpose of renting it. Had he been an agent of the company, as Garland supposed, Garland may well have entertained the opinion that his knowledge as to the vacancy was the knowledge of his principal, the insurance company, and it is not surprising that when challenged to state how the company had notice, Garland should refer to this more recent and continuous source of knowledge, rather than to the conversation between him and Case's clerk, at the time of the assignment of the policy; nor are we able to see that his having done so has any material tendency to impeach or contradict his testimony.

The account, then, which Garland gives of what was said and done at the time of the transfer of the policy, stands substantially uncontradicted and unimpeached, and for the purposes of this appeal, must be taken as the true narration of the occurrence.

Notice to the company of the vacancy of the building being thus established, it remains to be seen whether the condition by which the policy was to become void by reason of such vacancy was waived.

We may be aided in the solution of this question, by considering for a moment the nature and incidents of the contract of insurance, as affected by the alienation of the property by the insured, the assignment of the policy to the grantee, and the assent of the insurance company to the assignment.   By the alienation of the property, the contract of insurance between Mrs. McConnell and the insurance company was terminated, and nothing remained to her but the right to a return of the unearned premium.   The policy was a mere contract of indemnity, and after the assured had parted with her entire interest in the property, she was liable to no loss or damage from its destruction, and had it burned, the company would have incurred no liability to pay her or any one else for it. May on Ins. § 72.   Nor would the assignment of the policy to Mrs. Garland, of itself, vest the latter with any right to indemnity.   She could take by assignment only the interest of her assignor, which was merely a right to the unearned premium.   But the assent of the insurance company to the assignment, consummated a new contract of insurance with the assignee, the unearned premium in the hands of the company forming the consideration.

The rights of the assignor and assignee, independently of the assent of the insurer, are stated by Mr. Justice Story, in Carpenter v. Providence Washington Ins. Co. 16 Pet. 495, as follows:   "It is clear, both upon principle and authority, that an assignment of a policy by the insured, only covers such interest in the premises as he may have at the time of the insurance and at the time of the loss.   It is the property of the insured, and his alone, that is designed to be covered; and when he parts with his title to the property, he can sustain no future loss or damage by fire, but the loss, if any, must be that of his grantee.   The rights of the assignee cannot be more extensive under the policy than the rights of the assignor; and as to the grantee of the property, he can take nothing by the grant in the policy, since it is not in any just or legal sense attached to the property, or an incident thereto."

The effect of an assent to the assignment by the insurer, is stated by Chief Justice Shaw, in Fogg v. Middlesex Mut. Fire

Ins. Co. 10 Cush. 337, as follows: " As a policy of insurance is not a negotiable instrument, it cannot be legally transferred so as to enable the assignee to maintain a suit in his own name, without the consent of the other party. But in general, at the common law, where one party assigns all his right and interest in the contract, and the assignee gives notice to the other party to the contract, and he agrees to it, this constitutes a new contract between one of the original parties, and the assignee of the other, the terms of which are regulated and fixed by those of the original contract." Also, in Wilson v. Hill, 3 Metc. 66, the same learned judge says: " If the assured has wholly parted with his interest, before they (the buildings insured) are burnt, and they are afterwards burnt, the underwriter incurs no obligation to pay anybody. The contract was to indemnify the assured; and if he has sustained no damage, the contract is not broken. If, indeed, on a transfer of the estate, the vendor assigns his policy to the purchaser, and this is made known to the insurer, and is assented to by him, it constitutes a new and original promise to the assignee, to indemnify him in like manner, whilst he retains an interest in the estate; and the exemption of the insurer from further liability to the vendor, and the premium paid for insurance for a term not yet expired, are a good consideration for such promise, and constitute a new and valid contract between the insurer and the assignee." See, also, Foster v. Equitable Mut. Fire Ins. Co. 2 Gray, 216; Pratt v. N. Y. Central Ins. Co. 64 Barb. 589; May on Ins. § 378.

The rights of the parties, then are precisely what they would have been if the insurance company, instead of merely giving its assent to the assignment, had issued to the assignee a new policy for the unexpired term, containing the same stipulations and conditions. The question is thus presented, whether an insurance company after issuing a policy of insurance on a vacant building, with knowledge of the vacancy, will be permitted to defend against a loss, by setting up a condition by which the policy is to be void, in case the building becomes vacant.

Assuming that the policy is to be interpreted precisely as

Garland v. Ins. Co. of N. A.

though it were a new policy, issued at the time consent was given, it is plain that the condition can have no application to a vacancy existing at the time.   The language is: "If the assured *shall allow* the building herein insured *to become* vacant or unoccupied," etc.   This clearly refers and applies to property occupied at that date, and afterwards becoming vacant. This was the interpretation put upon a similar condition in Aurora Fire and Mar. Ins. Co. v. Kranich, 36 Mich. 289.

But apart from mere questions of construction, the rule seems to be supported by a multitude of authorities, that, where some fact forbidden by a condition of a policy exists, and is known to exist by the insurance company, at the time it issues its policy, the company will be held to be estopped from setting up the condition against a recovery for a loss. Thus, in Geo. Home Ins. Co. v. Kinnier's Adm'x, 28 Grat. 88, the policy contained a condition that it should be vitiated in case the premises became vacant, etc., and the court held that, "If at the time the agent of the company received the premium of insurance, and delivered the policy, he had knowledge of the vacation of the property, and did not then avoid the policy, but treated it as valid and subsisting, such conduct of the agent was a waiver of the condition, and a breach of it could not be relied on by the defendant to defeat the plaintiff's recovery."   In Williams v. Niagara Fire Ins. Co. 50 Iowa, 561; the policy contained a similar condition, and the court in the opinion, say: "The company, with full knowledge that the house was unoccupied, and would be for a time, issues the policy and receives the premium, and then, after a loss occurs, insists that it is not bound, and the policy never had a legal existence because said house was vacant.   Having issued the policy, taken the premium, and thereby induced the plaintiff to believe she was insured, the defendant is estopped from alleging or proving the policy never had a legal existence. By issuing the policy, the defendant waived the conditions as to the occupation of the building."

In Aurora Fire Ins. Co. v. Kranich, *supra*, it was held that a similar condition had no application to the case of buildings that were vacant at the time the policy was issued; and that if

the property was unoccupied at the time the risk was taken, with the knowledge of the insurer, but was afterwards occupied for a time, the insurer was liable, though the property, at the time of the loss, had again become vacant and unoccupied. The Supreme Court of Maine, in the case of North Berwick Co. v. N. England Fire & Mar. Ins. Co. 52 Me. 336, hold that the renewal of a policy, after knowledge of the existence of facts which would authorize the insurers to insist upon a forfeiture, would be deemed a waiver. In Ins. Co. v. Lyons, 38 Texas, 253, there was a condition that the policy should be void in case of other insurance, without the consent of the company written on the policy. The agent of the company was informed, at the time the policy was issued, that the insured had obtained additional insurance, and it was held that it was the duty of the company, upon being notified of the additional insurance, to endorse the same on the policy, or notify the assured of its refusal of the risk, and that, having failed to do either, it was estopped from setting up, as a defense, that such additional insurance was not endorsed on the policy. See, also, Richardson v. Westchester Ins. Co. 15 Hun. 472; Vicle v. Germania Ins. Co. 26 Iowa, 9, 54.

We are of the opinion that the principles recognized and established by the foregoing cases are applicable to the case at bar. The insurance company, being notified that the building was unoccupied, was put to its election, either to refuse its assent to the assignment of the policy, and thus decline to enter into a contract of insurance with the assignee, or to consent to the assignment, and thus consummate a valid and binding contract with her. It chose the latter alternative, and entered into the new contract upon a full consideration and with full knowledge of all the facts, and it ought not now to be permitted to deny the validity of its act, or to allege that when it retained Mrs. Garland's money and issued to her its contract of insurance, it knowingly entered into a merely worthless and void undertaking.

Nor is it a sufficient answer to say, that the remedy was in Mrs. Garland's hands, and that she might at any time, by having the building occupied, have vivified or infused vitality into

a contract which, at the time it was made, was without life or binding efficacy. If such had been the intention of the parties, doubtless some stipulation to that effect would have been embodied in the agreement. It would have been provided in some way that the liability of the company should only arise upon Mrs. Garland's placing a tenant in her house. As nothing of that kind was done, it must be presumed that the parties intended to enter into a contract which should become vital and enforceable from the very instant of its consummation.

A good deal of stress is laid by counsel in their arguments, upon the effect to be given to the conversation between Mr. Garland and Mr. Case's clerk, at the time application was made for consent to the assignment. Counsel for the insurance company insist that the clerk, in that conversation, directly asserted and notified Mr. Garland that if the premises were vacant the company would not be liable in case of loss, and advised him to attend to that matter, that is, get an occupant for the premises; and it is argued that, in view of that conversation, it cannot be inferred that there was a waiver of the condition. Even if the language of Mr. Case's clerk is to receive the interpretation here suggested, we cannot give it the effect claimed for it. This clearly follows from an application of the principles already laid down. The policy was not rendered void by a breach of the condition in relation to vacancy, but only voidable at the election of the company. Williamsburg City Ins. Co. v. Cary, 83 Ill. 453. And as the company took no steps to avoid the insurance, on being notified of a breach of the condition, but on the contrary, expressly ratified it, or rather, in consideration of the unearned premium, issued a new contract of insurance covering the same risk, a mere notice given at the time the negotiations were in progress, that the company would insist on the forfeiture, cannot avail.

The conversation referred to, however, is at best, ambiguous, and it is difficult to determine precisely how the clerk intended to be understood; but viewing it in the light of surrounding circumstances, we are not inclined to place upon it the interpretation above suggested. Referring to Mr. Garland's testimony, it will be seen that on learning that the house was va-

cant, thus probably, in his estimation, increasing the risk of its destruction by fire, he went at once to Mr. Case's office and applied for a transfer of the insurance to Mrs. Garland, telling Mr. Case's clerk that the house was vacant, and that for that reason he wished the transfer made that day. At that time he had not obtained possession of the policy, nor had any formal assignment of it to Mrs. Garland been made. He was told that unless he brought the policy duly assigned, the transfer would not be legal. On his importuning the clerk further, saying that it was late in the afternoon; that the party who had custody of the policy was a considerable distance away; and that on account of the vacancy of the premises, he was anxious to have the transfer of the insurance consummated at once, the clerk remarked " that they could put it on their books, but it would not be legal without I had the policy with Mrs. McConnell's signature attached, and if the house was vacant, that I had better attend to that part of the business, because it would not amount to anything if the house was destroyed; they would not be liable for the loss."

It is evident that the subject these men were discussing was the mode by which a legal transfer of the insurance could be effected. The policy had not been obtained, and it would take a considerable time to get it and procure Mrs. McConnell's assignment. In Mr. Garland's view there was occasion for immediate action, and he was correspondingly urgent. The suggestion being made that a transfer might be made on the books, the agent decided, and very properly, that such transfer would not be legal. Nothing remained but for Mr. Garland to go and get the policy, and get it assigned and bring it to the office; and the clerk, as it seems to us, merely by way of suggesting that he go at once and do this, added that "if the house was vacant," that is, if there was that extra hazard in consequence of which he was so anxious to have the transfer immediately consummated, " he had better attend to that part of the business," that is, the obtaining of the policy, " because it," a mere transfer on the books, " would not amount to anything if the house were destroyed," and that in that event the company would not be liable for the loss.

But to understand the clerk, in this conversation, as urging Garland to attend to getting an occupant for the house, and as telling him that his failure in that respect would release the company from liability, would be intruding into the conversation an element entirely foreign to the one the parties were discussing. . And it is singular that such element being introduced should have been carried no further, but left in the vague and ambiguous condition in which the conversation leaves it. This is especially so, in view of the testimony of Mr. Case and both his clerks in relation to their usual practice in cases where buildings insured became vacant. According to their testimony, it seems to have been their uniform practice, if not their express rule, to return the unearned premium and cancel the policy. No such course was suggested here, nor was anything said or proposed by the clerk on that subject. It seems clear from this consideration also, that the clerk could not have had in mind, and that he was not discussing the question of a breach of the condition, or of the right of the company to declare a forfeiture for its breach.

We reach the conclusion that the court below, in holding that, as to Mrs. Garland, the policy was void by reason of a breach of the condition in relation to a vacancy, decided contrary to the evidence, and for that reason the decree will be raversed and the cause remanded for further proceedings, not inconsistent with this opinion.

Decree reversed.

WILSON, P. J. I am unable to concur in the conclusion reached by a majority of the court.