Carrugi *vs.* The Atlantic Fire Insurance Company.

JOHN CARRUGI, plaintiff in error, *vs.* THE ATLANTIC FIRE INSURANCE COMPANY, defendant in error.

Where a policy of insurance contained a clause that "if any prior or subsequent insurance has been, or may hereafter be, made upon said property, and not consented to by said company, in writing, this policy shall be null and void," and the policy-holder notified the agents of the company that he would get additional insurance, and the agent consented, and the insured acted upon that consent and purchased the insurance, the first policy is not void, although the consent of the agent was not in writing.

An agent of an insurance company authorized to make and revoke contracts of insurance, is the proper person to give consent to the procuring of new insurance, unless his powers be restricted by the company in this respect, and the insured have notice of the restriction.

Notice of an intention to get additional insurance, and consent thereto by the agent of the company, is sufficient, under the clause in this policy, to justify the insured in procuring the new insurance, there being no fraud.  But if, after this new insurance is effected, the original policy be renewed, and no other notice in fact be given to the agent of the new insurance, the insurance will or will not be valid, according, as from all the facts and the conduct of both the insured and the agent, the jury shall believe it was or was not the intent of the insured to commit a fraud by over-insuring his property.

In this case it is by no means clear, from the evidence, what the proper verdict should be, and as the Court below has granted a new trial, we do not think he has abused his discretion, and we affirm the judgment.

Insurance.  Waiver by Agent.  Pleading.  New Trial.  By Judge JOHNSON.  Muscogee Superior Court.  August, 1869.

Carrugi averred that the Atlantic Fire Insurance Company, of Brooklyn, New York, chartered by the laws of New York, and doing business, by an agent, in Columbus, Muscogee county, Georgia, owed him $5,000 00 and interest, because of a loss by fire; for that, on the 16th of January, 1866, in consideration of a premium paid to said agent, said company insured Carrugi's certain property, specified by a policy then delivered to him, upon the terms and conditions specified in said policy, for six months, at $5,000 00.  By like payments of premiums said policy was renewed, the last renewal being for the term between the 16th of January, 1867, until the 16th of July of that

year. One of the conditions of said policy was, that in case of loss, the company would pay the then actual cash value of the insured property. Another was: "If any other insurance has been, or shall be hereafter, made upon said property, and not consented to by this company in writing, this policy shall be null and void." Before this last renewal, to-wit: on the first of January, 1867, he asked said agent for $5,000 00 of additional insurance; the agent said he would like to give it, but was not authorized to insure more than $5,000 00 on any property. Carrugi told the agent he would get the additional insurance in some other company, and the agent consented that he might do so, knowing that had he refused, Carrugi would, as he was allowed by his policy to do, have cancelled said policy, and received back part of the premium paid. This consent was a waiver of said quoted condition in said policy, or if not, equity would now compel the consent to be given in writing, if necessary, and therefore equity will consider it as already done. After this verbal assent of the agent, on the 4th of January, 1867, Carrugi obtained insurance for $5,000 00 on said property in other companies. On the 24th of March, 1867, the property was burnt. Carrugi made the preliminary proofs as required by another condition in said policy, and yet the defendant refused to pay said insurance.

This petition was served by leaving a copy of it with said agent. The defendant's counsel, at the first term, moved to dismiss the case, because, as they contended, said defendant was suable here only by attachment. This motion was over-ruled.

They pleaded *non est factum*, that Carrugi's failure to give notice at the time of the last renewal of the other insurance, and having defendant's written consent thereto, avoided the policy; that it was avoided by a condition therein that if the assured should not own the property absolutely he should dis-close his real interest, and have it expressed in the policy, which Carrugi did not do, though his interest in all of said insured property was not absolute; that he could not recover, because after making the original policy he had changed his interest

Carrugi *vs.* The Atlantic Fire Insurance Company.

in it by mortgaging the property, and gave no notice thereof to defendant; that one of the conditions of said policy was, that "all fraud, or attempt at fraud, by false swearing or otherwise, shall cause a forfeiture of claim on this company under this policy," and that Carrugi had falsely sworn, with intent to defraud defendant, by putting his aggregate loss at $14,307 39 in his preliminary proofs, and making up that amount by swearing therein that he had priced goods bought abroad at actual cost, where he priced them, with freight added, and his other property at its actual cash value when burnt; that if bound at all it should only pay its *pro rata* share of the actual loss.

Another condition of said policy was, that in case of loss the company might, if it pleased, replace the property in kind. On the trial there was much evidence *pro* and *con* as to the value of the property insured. Much of it was a stock of groceries and furniture, bedding, wearing apparel, etc. Carrugi, and members of his family, were shown a list, which they said they had made up from memory shortly after the fire, and some twenty months before the trial, and while testifying were asked if it was correct. For instance, his counsel would see on the list " Peach Brandy," and would ask, " had plaintiff any peach brandy?" Upon being answered " yes," he would ask how much and of what value. As to value and quantity the answer was from the memory of the witness. This mode of examination was objected to, and the objection was overruled. He and his family, in this way, proved the specified articles, some remembering part of the articles and their value, but none pretending to recollect all.

Carrugi and his family testified to the consent of said agent for him to take out other insurance substantially as is set forth in the petition. (The agent swore he did not, nor would have made such consent.) Defendant's counsel objected to this testimony, upon the grounds that a verbal consent was not good, and that an agent could not make such consent. These objections were overruled. In proving values Carrugi put them at their retail prices; for instance, he put

cigars which cost $100 00 at $200 00. This was objected to, but allowed by the Court. Pending the argument, plaintiff's counsel spoke of what would have been shown by certain interrogatories ruled out. Upon objection, the remark was withdrawn. Defendant's attorney, in his speech, said the amount claimed by Carurgi would buy a principality in Italy. Who is Carrugi? (He was an Italian.) In the reply of plaintiff's attorney, he said, "Who is the defendant? The name is enough. Who knows but Meade & Mills, and men, who came here with Wilson's raid, compose this company."

Defendant's counsel requested the Court, in writing, to charge the jury that the conditions of the policy were binding on Carrugi unless the Company had waived them ; that in estimating loss they should find what it would cost to replace the goods in *statu quo*, and not their retail value, as that would include profits; that parol notice that he would get other insurance was insufficient under said quoted condition in the policy, nor would the parol agreement set out in the petition avoid that condition, but there must be actual notice of said other insurance having been obtained ; that an agent can only bind the principal within the scope of his authority, and an agent of an insurance company has no implied authority to change its written contracts ; he must have express authority. The Court refused so to charge. Besides these requests they also requested the Court, in writing, to charge the jury, that an attempt to defraud defendant by an over valuation of the property insured, by attempting to prove an over valuation of the property lost, avoided the policy. From the position of this request on the paper the Court overlooked it, and did not so charge. Whether he would have charged it, had he noticed it, does not appear. His attention was not called to it till after the verdict.

The Court charged the jury that if Carrugi had the agent's verbal consent to insure his property in other companies, that subsequent insurance did not work a forfeiture, although no notice of this additional insurance was given to the agent after it was made.

After the argument, but before the charge, the jury were

permitted to go to dinner, being enjoined not to make up any opinion till they had heard the charge of the Court, nor to converse with any one, or with each other, about the case. One of Carrugi's counsel accidentally went out with the jury, and was walking between two of them. A citizen joined the three, and remarked, "These insurance companies are swindling concerns; I'm down on them." Nobody made any reply to this.

The jury found $4,625, principal, besides interest, for Carrugi. Defendant's counsel moved for a new trial upon the grounds, that the Court erred in permitting the witnesses examined by said list, as they were; in allowing evidence of the verbal assent of the agent for other insurance; in allowing proof of the retail prices of his goods; in refusing to charge as requested and in charging as he did; and because the said remarks by counsel in argument, and the remarks by a citizen, in hearing of two jurors, were calculated to prejudice the jury against the defendant, and because the verdict was against the weight of the evidence. Judge Johnson granted a new trial without stating upon what ground he put it. This is assigned as error.

BENNING, RAMSEY & RUSSELL, for plaintiff in error, said the examination by lists was not wrong: Irwin's Code, sec. 3809. Retail prices were admissible to show "cash value:" Hoffman vs. Ætna Ins. Co., 1 Robt.. N. Y., 501–32; N. Y., 405; Dig. F. Ins. Dec., 2d ed., 207, sec. 29; Irwin's Code, sec. 2773. Assured entitled to interest: 5 Penn. St. R. 183; Dig. F. Ins., 2d ed., 268, sec. 5. The verbal power was good: Irwin's Code, sec. 3753; 1 Parsons on Ins. 145; Goss vs. Mynet, B. & Ald., 58; 19 How. R., 318; Ch. on Con., 105; Fleming vs. Gilbert, 3 John. R. Issuing policy after notice of other insurance is waiver of endorsement in writing, or an estoppel, 16 Md., 260; Dig. F. Ins., 413, section 83; 416, sec. 89; 436, sec. 27; 443, sec. 4; 4 Bosw. N. Y.; Leddle vs. M. F. In. Co., 20 Barb. N. Y. C. In. Co., vs. N. Pro. Co. Any condition may be waived: Dig. F. Ins. Decisions, secs. 4 to 24, inclusive, page 50, sec. 64, page 637,

secs. 3 to 32, inclusive. An agent may make the waiver: Irwin's Code, secs. 1679, 2170, 2174, 2175. Said Digest, p. 34, secs. 7, 11, 12, 15, 20, 23, 44, 46, 48, 52, 53, 57, 58, 62, 63, 64, 65, pages 176, 177, secs. 2 and 3 ; 641, secs. 20, 23, 25, 31 ; 637, secs. 4, 8, 9, 10, 24 ; 1 Par. on In., 36, 37, and cases cited. If notice was not given because of agent's fault, plaintiff excused : Irwin's Code, sec. 2822 ; Ch. on Con., 623 ; Estoppel, secs. 2915, 3700 ; parol to change writing, section 3753. If consent need be in writing, it was to be considered as done : Sec. 3031 ; Dig. F. In. Dec., 412, secs. 83, 89, 105 ; Ib., 254, sec. 12. The other policies contained like clauses, and no notice was given to those companies; if they were void, then there was no other insurance as against defendant : Dig. F. Ins. Co., 393, secs. 40, 45, 51, 82, 84, 90, 96, 103, 109.

MOSES & GERRARD, for defendant, furnished no brief to the Reporter.

McCAY, J.

This is an important question, one, within the last few years, of very common occurrence, but never yet distinctly before this Court. Insurance agents, of whom every hamlet has its supply, are very anxious to take risks, and our people are too prone to trust entirely to them, as to what it is necessary to do to comply with the terms and regulations of their companies. A man frankly informs the agent that he has already one insurance, and desires another. Perfect good faith exists on his part. He tells the truth and the whole truth. He trusts the preparation of the papers to the agent, and finds, when a loss occurs, that because the agent has failed to enter in writing upon the policy the fact that the company is aware of, and consents to, the prior insurance, the policy is said to be void. So too, after the policy has issued, he desires additional insurance ; he informs the agent of it, he approves and consents, and the insured, thinking all right, takes new risks, *pays* out his money, and at the very time he feels that he has made himself doubly safe, he has only done

that which makes his policy void.    This is an every day occurrence, and arises from the introduction of this new clause, only lately thought of, in insurance policies.

We have given this matter great consideration, and have come to the conclusion, that, if the agent be, in fact, informed, and do, in fact, consent, and the insured, relying on that consent, do, in good faith, pay out his money, it does not make the policy void.

The company, in this case, is a foreign corporation, its agent here is its representative, and is a general agent, for all the purposes of taking and revoking risks; *prima facie*, those who deal with the agent, in the line of the business, have a right to consider him as authorized to do and consent to all acts, within the scope of the business.    Consent to a prior or subsequent insurance, is within that scope, as the every day practice of the country proves, and if an agent does, in fact, so consent, and the insured, in good faith, acts upon it, we think it is fraud upon the insured for the company to set up that they had stipulated this consent to be in writing.

It will be noticed that this stipulation has nothing really to do with the *contract of insurance*.    Double insurances are perfectly legal.    They are, in fact, an advantage to the company, since, in case of loss, they can compel a division of the loss.    The only object of this clause, at least the only legitimate object, is to guard against the over insurance of the property, and the consequent temptation to crimes.    But when it affirmatively appears that the consent was given, and that the insured has *acted* upon it, we think it would but be the perpetration of a fraud to permit the company to take advantage of its own wrong, and escape liability; because *its agent* has failed to do his duty to the insured.

For myself, I am of opinion that such stipulations are void.    Parties may stipulate as they please, in their contracts, as to the several rights and obligations of each, but the mode by which it shall be proven whether or not there has been a breach or performance of those stipulations, is matter to be regulated by law, and not by the stipulations of the parties. Whether parol evidence is admissable to prove the facts, or

whether they can only be proven by writing, it seems to me is regulated by law, on grounds of public policy, and for the public convenience, and is not matter of stipulation. Would a promissory note from A to B, stipulating that no proof of its discharge should be taken, unless it were proven by two witnesses, be binding? Would a contract, to be performed on a certain day, and stipulating that the day should not be altered, by a subsequent contract, without proof in writing, signed by the obligee, bind the obligor, if, in fact, for a new consideration, there should be a change of the day, and no writing be taken? I think not, and I think these stipulations stand on the same footing. It is an attempt to change the rules of evidence, to make a new law; to regulate the proceedings of the Courts. This is not like the execution of a promise, which contains limitations as to the mode of its exercise. This is a simple attempt to change the mode by which the Courts should arrive at whether there has been a performance or breach of a contract. In my judgment, parties cannot do that. Such rules and modes are regulated by law, on grounds of public policy. They might as well stipulate that the fact of consent should be proven--only by the personal attendance of the witness, and not by interrogatories, or that it should not be proven, as our law now permits, by the parties.

The judgment of the Court, in this case, is, however, put upon the ground that it would be a fraud upon the rights of the insured, after he has got the consent of the agent, and *acted upon it*, to insist upon the written consent. The issue before the jury, in this case, is wholly one of *bona fides*. If there was an intent, on the part of Carrugi, to defraud, as a matter of course the policy is void. It is the essence of these contracts that there should be the utmost good faith, and this on grounds of public policy, independent of the rights of the parties in the particular case.

It must be a strong case, to induce us to interfere with the discretion of the Court, in motions for new trial. The law gives him a discretion. He has opportunities for knowledge about the witnesses, and the degree of credit to be given

them, which cannot be gotten before this Court.    We do not think he has abused his discretion in this case.

. Judgment affirmed.