FIREMAN'S FUND INS. CO. et al. v. NORWOOD et al.

(Circuit Court of Appeals, Eighth Circuit. June 17, 1895.)

No. 501.

INSURANCE—WAIVER OF CONDITIONS—ESTOPPEL.

    One S., the general agent of certain insurance companies, called upon plaintiff and asked to be allowed to place some of the insurance on plaintiff's stock. He inquired how much insurance plaintiff intended to carry, and plaintiff told him $40,000, and subsequently authorized him to place $10,000 of such insurance. S. afterwards delivered to plaintiff policies, including two of $2,500 each, to which were attached riders allowing other

insurance to the amount of $27,500, and which both contained the condition that if the assured should have or afterwards effect other insurance, without the written consent of the company, the policy should be void, and which also provided that only certain specified officials should have authority to waive or modify the conditions of the policy. When plaintiff received the policies, he examined them to see that the amounts were correct, but, relying on his conversation with the agent, did not examine them further, and placed them in his safe. *Held,* that by delivering the policies with knowledge, through their agent, of the amount of insurance intended to be taken, the companies waived the condition as to other insurance, and were estopped to set the same up, after a loss; plaintiff having a right to rely on such knowledge of the agent. Per Caldwell and Thayer, Circuit Judges. Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of Kansas.

Separate suits were brought by O. F. Norwood and E. R. Norwood, the defendants in error, against the Fireman's Fund Insurance Company and the Norwich Union Fire Insurance Society, the plaintiffs in error, to recover alleged losses on policies of fire insurance on a stock of merchandise issued by these companies, respectively, to the defendants in error. By agreement of the parties, the suits were consolidated and tried as one cause. The policy issued by the Fireman's Fund Insurance Company bore date November 5, 1891, and contained the following conditions: "If the assured shall have or shall hereafter make any other insurance, whether valid or not, on the property hereby insured, or any part thereof, without the consent of the company written hereon, this policy shall be void. * * * All fraud or attempt at fraud, by false swearing or otherwise, shall cause a forfeiture of all claims under this policy. * * * And it is hereby understood and agreed by and between this company and the assured that this policy is made and accepted in reference to the foregoing terms and conditions, which are hereby declared to be a part of this contract, and are to be used and resorted to in order to determine the rights and obligations of the parties hereto in all cases not herein otherwise specially provided for in writing. It is further understood and made a part of this contract that only the manager of this company at Chicago has authority to waive, modify, or strike from this policy any of its printed conditions, nor is the consent of an agent to an increase of risk binding upon the company until the same is indorsed in writing upon the policy and the increased payment paid; and, in case this policy shall become void by reason of the violation of any of the conditions thereof, it is understood that only the said manager has power to revive the same, and that a new policy intended to replace any policy so made void shall be of no effect until the actual issue and delivery thereof to the assured, any contract by parol or understanding with the agent to the contrary notwithstanding." The policy issued by the Norwich Union Fire Insurance Society bore date November 5, 1891, and contained the following conditions: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void, if the insured new has, or shall hereafter make or procure, any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy. * * * This entire policy shall be void in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after loss. * * * This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements, or conditions as may be indorsed hereon or added hereto, and no officer or agent or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto; and, as to such provision and conditions, no officer, agent, or representative shall have such power, or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached." To each policy was attached a slip or rider allowing $27,500 ad-

ditional insurance. The total insurance on the stock at the time of the fire was $38,300. W. B. Smith was the general agent of the defendants at Larned, Kan., where the plaintiffs were carrying on a mercantile business. A witness testifies that: "Mr. W. B. Smith came to me and wanted me to see Mr. Norwood and see if he would not let him have a part of the insurance. He said he was placing a large amount of insurance, and came to me and insisted that I should go and see Mr. Norwood and have him give him some of the insurance. He said to me that these people were carrying a large amount of insurance, and that he presumed that they would carry about the same amount as last year. I says, 'You are well acquainted with him, and you can go and have a talk with him'; and I says, 'I presume likely that if he is not bound up he will let you have some of it.'" One of the plaintiffs testifies as follows: "Mr. Smith came into the store and asked me if he could take out some insurance on the stock. I told him I had made arrangements with Mr. Ormandy to look after the insurance for me, and then he says he wanted to know how much insurance we were going to carry, and I told him forty thousand dollars. After a little while longer, I says: 'I will tell you what I will do, Mr. Smith. I will go and see Mr. Ormandy, and if it is satisfactory to him I will let you have a portion of the insurance.' I went right from Mr. Ormandy's office to Mr. Smith's office, and saw him there, and told him that I had seen Mr. Ormandy, and that it was satisfactory to him, and I would let him carry ten thousand dollars on my stock." Policies in four different companies for $2,500 each, amounting to the $10,000, were soon thereafter delivered by Smith, the agent, to the insured, who, after looking at their face to see that the amount was correct, put them in their safe, and did not know until after the fire that the policies limited concurrent insurance to $27,500, instead of $40,000, as the insured had stated to the agent, Smith. No exception was taken to the charge of the court. Exception was duly saved to the refusal of the court to give the following instructions asked by the defendants: "If you find that, after said policy was issued, plaintiffs procured other insurance, which made the aggregate amount of insurance on said policy exceed thirty thousand dollars, and that provision therefor was not indorsed on the policy, then plaintiffs are not entitled to recover, although they may have informed the agent, before the policy was issued, that they desired or expected to carry forty thousand dollars of insurance on said stock, and the agent orally assented thereto, and your verdict must be for the defendant company." "You are instructed that it is admitted by the pleadings that at the time of the fire plaintiffs had insurance on said stock amounting to thirty-eight thousand three hundred dollars. Now you are instructed that mere parol notice to defendants' agent, Smith, before said policy was issued, that plaintiffs desired or expected to carry on said stock of goods more than thirty thousand dollars, and the statement from Smith that the same would be all right, was not of itself sufficient to comply with the requirement of said policy, but it was necessary, in case plaintiffs procured more than thirty thousand dollars insurance on said property, that the same should not only be notified to defendants, but should be mentioned in or indorsed upon the policy, otherwise the policy was void and of no effect." Among other defenses, the answer set up these two: (1) Other insurance for which written consent had not been indorsed on the policy; and (2) a fraudulent overvaluation of the goods in the proofs of loss. In the circuit court the first defense seems to have been the one chiefly relied on. The jury found the property was worth all the plaintiffs claimed it was, and the evidence abundantly supports the finding; and the second defense need not be further noticed.

M. A. Fyke (Ed. E. Yates and C. V. Fyke, on the brief), for plaintiffs in error.

C. N. Sterry (W. H. Vernon, on the brief), for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Upon the evidence and the authorities, it cannot be controverted that Smith was the general agent of the defendants, and that whatever he said and did in soliciting, issuing, and delivering the policies in suit, and collecting the premiums, has the same legal effect as if done by the company itself. The material question in the case is whether the instructions asked by the defendants, and which we have set out in the statement, should have been given. The contention of the plaintiff in error is that the condition in the policy that "if without written consent hereon there is any prior or subsequent insurance, valid or invalid, on said property, this policy shall be void," cannot be waived by parol, and that nothing that the defendants' agent may have said or known or verbally agreed to in relation to prior or subsequent insurance can operate to effect or avoid this condition, either by way of waiver or estoppel or as a new contract; but that there must be a written consent indorsed on the policy, as provided in the condition, or other insurance avoids the policy. In the early case of Carpenter v. Insurance Co., 16 Pet. 495, which is the first case cited in the brief of the plaintiffs in error, it is held by the supreme court of the United States that the requirement of written consent cannot be waived by parol, but must be indorsed in writing on the policy; and in some early cases in the state courts the same doctrine was maintained, and is probably still maintained in Massachusetts and Rhode Island, although the supreme court of the latter state in a recent case concedes that it is against the weight of authority. In Reed v. Insurance Co. (R. I.) 24 Atl. 833, the court said:

"The first question is whether the defendant company is estopped from setting up the clause in question by notice to itself of the prior insurance at the time the policy was issued. * * * The same question was decided in Greene v. Insurance Co., 11 R. I. 434, where it was held that a mistake in a policy, limiting the amount of insurance, after due notice to the company of a larger amount, might be shown in evidence by way of estoppel. The ground of the decision was that it would be a kind of fraud for the insurers to insist upon a forfeiture for which they were more blamable than the insured. It would be taking advantage of one's own wrong. We see no reason to question that decision, and, following it, we must hold the first replication to be good. * * * The fourth replication raises the question, of greater difficulty, whether the fact that the plaintiff informed the agent of the defendant company, who procured the insurance, of the existence of other insurance, is a sufficient answer to the plea setting up the clause of the policy as to other insurance, and alleging the breach of it. Upon this point we think the tendency and weight of modern decisions are in favor of the plaintiff. * * * There is much room for doubt, therefore, whether public policy requires the adoption of a rule which treats a contract of insurance differently from any other contract in writing. But, however this may be, we recognize the tendency of decision in favor of the insured, and, if this were a new question in this state, we might feel compelled to yield to the weight of authority."

The early doctrine on this subject has been so generally denied and repudiated by the courts of the country, state and federal, that it has come to be regarded as overruled and obsolete. Among the decisions of the supreme court of the United States which effectually dissipate the doctrine of Carpenter v. Insurance Co., supra, attention may be called to the cases of Insurance Co. v. Wilkinson, 13

Wall. 222; Insurance Co. v. Norton, 96 U. S. 234; Eames v. Insurance Co., 94 U. S. 621. In the case last cited the supreme court say:

"According to the views expressed by this court in Insurance Co. v. Wilkinson, 13 Wall. 222, and other more recent cases, the defendant was concluded by the act of its agent. The reference to collateral insurance in other companies is subject to the same consideration. The insurance was being applied for through this very agent who wrote the answers, and who knew the whole facts, and between whom and the general agent they had been referred to in their correspondence. The defense on this ground is utterly destitute of equitable consideration."

The cases in this court to the same effect are Insurance Co. v. Snowden, 7 C. C. A. 267, 58 Fed. 342; Insurance Co. v. Robison, 7 C. C. A. 444, 58 Fed. 723; Assurance Soc. v. Winning, 58 Fed. 541, 7 C. C. A. 359, 19 U. S. App. 173.

The rule deducible from the great weight of modern authority is that if, before or after the policy is issued, the agent has notice of the amount of insurance which the insured is carrying or intends to carry on the property insured, and makes no objection thereto, the company will be estopped from claiming a forfeiture, after there is a loss, upon the ground that such prior or subsequent insurance, of which its agent had notice in fact, was not indorsed in writing on the policy. When notified that other insurance has been or will be obtained, it is open to the agent, if the policy has not been issued, to decline the risk, or, if it has been issued, to cancel the policy. The company cannot after such notice accept and retain the premium, and when a loss occurs avoid the policy because its agent had not indorsed thereon the company's consent to the prior or subsequent insurance of which he had notice. It is contended that consent to other insurance cannot be proved by oral evidence—First, because the policy provides that it shall be in writing indorsed on the policy; and, second, because it would violate the rule against the reception of oral evidence to contradict or vary a written instrument. But it has been authoritatively decided that a contract of insurance is not within the statute of frauds, and may be by parol. Commercial Ins. Co. v. Union Mutual Ins. Co., 19 How. 318; Insurance Co. v. Shaw, 94 U. S. 574; Henning v. Insurance Co., 2 Dill. 26, Fed Cas. No. 6,366. And if it can be made by parol, it may be varied by parol. Parties to contracts cannot disable themselves from making any contract allowed by law in any mode the law allows contracts to be made. A written contract may be changed by parol, and a parol one changed by a writing, despite any provision in the contract to the contrary.

"A written bargain is of no higher legal degree than a parol one. Either may vary or discharge the other, and there can be no more force in an agreement in writing not to agree by parol than in a parol agreement not to agree in writing. Every such agreement is ended by the new one which contradicts it. Insurance Co. v. Earle, 33 Mich. 153. See, to the same effect, Insurance Co. v. McCrea, 8 Lea, 513; Insurance Co. v. Norton, 96 U. S. 234; Pechner v. Insurance Co., 65 N. Y. 195; Insurance Co. v. Wilkinson, 13 Wall. 222."

In Insurance Co. v. Norton, supra, the policy contained a condition that, unless otherwise expressly agreed in writing, it should be

null and void if the premiums were not paid on the days mentioned in the policy, and also the further condition that "agents of the company are not authorized to make, alter, or abrogate contracts, or waive forfeitures." The insured in that case made an application to the company's agent for an extension of time to pay the premium note, and the agent answered "All right." Parol evidence was offered to prove this fact, and the further fact that it was the practice of the defendant's agent to extend the time of payment of premium notes, and that the company had knowledge of this practice. The defendant moved to strike out this testimony because it was "in conflict with the terms of the policy, and as showing no authority in Frary [the agent] to give the alleged consent." Answering this objection, the supreme court said:

"But a party always has the option to waive a condition or stipulation in his own favor. * * * And whether it did exercise such option or not was a fact provable by parol evidence as well as by writing, for the obvious reason that it could be done without writing."

Nor can parties by their contracts debar themselves of the right to prove their cause of action or defense by any species of evidence which the law declares to be competent and legal. The application of this doctrine is not always invoked in the interest of the insured. It is applied for the protection of the insurer as well. In Emerigon on Insurance (Meredith's translation, pp. 607, 608) it is said:

"The agreement that the insurer shall abide by the affirmation of the assured on the subject of the disaster is unlawful, for no one may be a witness, and still less the sole witness, in his own case. But agreement to abide by the attestation of the captain is valid, saving the right to produce proof to the contrary."

Parol evidence that the company had knowledge of and consented to other insurance is not introduced to contradict or vary the written conditions.

It is every day practice to receive parol evidence to establish or overthrow written instruments, or to show that some claim based thereon has been waived by the party claiming under it, or that he has so acted towards the other party that he is estopped from setting up the claim. In all such cases the existence of the contract is neither denied nor its terms sought to be varied by parol. The condition in this policy is admitted, but the insured says the insurance company, by delivering the policy and receiving the premium thereon with notice of the other insurance then existing or thereafter to be obtained, thereby gave its consent to such other insurance, and asserted the validity of the policy, and it cannot be heard after the loss to say that the policy is void. "This act," says the New York court of appeals, "may be called a waiver, or may be treated as an estoppel." Pitney v. Insurance Co., 65 N. Y. 6.

The company cannot play fast and loose. It cannot issue a policy which is valid for the purpose of receiving the premiums, but invalid when it comes to pay a loss. In May on Insurance (section 497) the rule is stated thus:

"To deliver a policy with full knowledge of facts upon which its validity may be disputed, and then to insist upon these facts as ground of avoidance, is to attempt a fraud. This the courts will neither aid nor presume; and, when the alternative is to find this, or to find that, in accordance with honesty and fair dealing, there was an intent to waive the known ground of avoidance, they will choose the latter."

In the case of Carrugi v. Insurance Co., 40 Ga. 135, a policy contained a condition similar to those in the policies in suit. The lower court charged the jury:

"That, if Carrugi had the agent's verbal consent to insure his property in other companies, that subsequent insurance did not work a forfeiture, although no notice of this additional insurance was given to the agent after it was made."

The supreme court affirmed the soundness of this instruction, saying:

"Consent to prior or subsequent insurance is within that scope [of the agent's authority], as the every-day practice of the country proves; and if an agent does in fact so consent, and the insured in good faith acts upon it, we think it is fraud upon the insured for the company to set up that they had stipulated the consent to be in writing."

The injunction of the law is upon every man not to perpetrate fraud. If, notwithstanding this injunction of the law, he seeks to use any stipulation in a contract in a manner that will absolve him from an honest obligation, and enable him to perpetrate a fraud upon an innocent party whom he has misled by his fraudulent conduct, a court of justice will not lend its assistance to effectuate the fraud, but will hold him estopped to make such an unconscionable use of the contract. It is not in the power of an insurance company to abolish the law of estoppel or of waiver, or exempt itself from its operation, by any provision or condition that it can insert in its policies. The chief office of estoppel or of waiver is to prevent the consummation of fraud, and, when the facts bring the case within the well-settled rules on this subject, no stipulation of the contract can be used to stay its operation. Public policy and sound morality forbid that any stipulation in a contract shall, either in terms or by construction, have the effect to preclude a party who has been deceived and defrauded by the other party to the contract from setting up such fraud by way of estoppel or waiver, or as a defense, as may be indicated by the rules of law applicable to the case. Bridger v. Goldsmith (N. Y. App.) 38 N. E. 458; Fashion Co. v. Skinner, 64 Hun, 293, 19 N. Y. Supp. 62; Hofflin v. Moss (at the present term), 14 C. C. A. 459, 67 Fed. 440.

It is next said that it was the duty of the insured to examine the policies at the time the agent delivered them, and see that he had made the required indorsement in relation to other insurance, and that, not having done so, they are conclusively bound by the condition. The law imposed no absolute duty on the insured to see what indorsement the agent had put on the policy in relation to other insurance. The insured had done their duty in the premises. They had imparted to the agent the requisite information to enable him to make the proper indorsement. It was his duty to make it in conformity to the information given him, and the insured had a right

to rely upon his performing that duty, and his failure to do so, whether the result of a mistake or of a deliberate fraud, cannot operate to the prejudice of the insured. The contract of insurance is pre-eminently one that should be characterized by the utmost good faith on both sides. There is no rule of law requiring the business world to deal with insurance agents upon the assumption that they are cheats and frauds. The presumption is that they are reasonably intelligent and honest men, who know and perform their duty both to the insurer and to the insured, and the company cannot escape payment of the loss merely because the insured acted upon this presumption. In answer to a similar contention, the supreme court of Pennsylvania said:

"We cannot say that the law, in anticipation of a fraud upon the part of a company, imposed any absolute duty upon Kister to read his policy when he received it, although it would certainly have been an act of prudence on his part to do so. Insurance Co. v. Bruner, 23 Pa. St. 50; Insurance Co. v. Wilkinson, 13 Wall. 222. One thing is certain, however, the company cannot repudiate the fraud of its agent, and thus escape the obligations of a contract consummated thereby, merely because Kister accepted in good faith the act of the agent without examination."

In the case of Insurance Co. v. Steiger, 26 Ill. App. 228, the same question arose, and the court said:

"Plaintiff's testimony that defendants' agent called on him, and solicited a renewal, and asked how much insurance he already had; that he said he did not know, but referred the agent to two other agencies in the city for information; that a few days later he found on his desk the policy in suit, and that, supposing it to be properly drawn, he placed it in his safe without examination,—supports a finding for the plaintiff on the defense of other insurance not allowed by the policy."

It would serve no useful purpose, and protract this opinion to an unjustifiable length, to cite all the cases pro and con on the question of waiver of such conditions. The cases are collected in May, Ins. §§ 369, 370; Brown, Par. Ev. § 48; Carpenter v. Insurance Co., 2 Am. Lead. Cas. p. 911. Of the very many cases supporting the conclusions reached we content ourselves with referring to the following: Insurance Co. v. Mathews, 8 Lea, 499; Pechner v. Insurance Co., 65 N. Y. 195; Short v. Insurance Co., 90 N. Y. 16; Havens v. Insurance Co., 111 Ind. 90, 12 N. E. 137; Insurance Co. v. Lyons, 38 Tex. 253; Morrison v. Insurance Co., 69 Tex. 353, 6 S. W. 605; Bennett v. Insurance Co., 70 Iowa, 600, 31 N. W. 948; Fishbeck v. Insurance Co., 54 Cal. 422; West Coast Lumber Co. v. State Inv. & Ins. Co. (Cal.) 33 Pac. 260; Insurance Co. v. Earle, 33 Mich. 143; Insurance Co. v. Luttrell, 89 Ill. 314; Viele v. Insurance Co., 26 Iowa, 9, and note.

A statement and examination of the exceptions to the ruling of the court in admitting and rejecting evidence is not necessary, as none of them is of any general importance. They have all been carefully considered, and we are satisfied they are without merit. The judgment of the circuit court is affirmed.

SANBORN, Circuit Judge (dissenting). Does the statement of the insured that he intends to increase his insurance to a fixed amount,

made in the parol negotiations that eventuate in a subsequent written policy, which contains a written consent to all the concurrent insurance in existence at its date, but which also contains the usual provision that the company shall consent to any subsequent increase of the insurance above the amount stipulated, or the policy shall be void, estop the company from enforcing the latter provision, or waive, in advance of the execution of the policy, the contract right the policy purports to secure by this provision? The majority of the court answer this question in the affirmative. With great respect for their opinion, I find myself unable to concur in that view. I think the proposition they maintain is unsound for two reasons: First, because it deprives parties of the right to make a contract that is neither immoral, illegal, nor in contravention of public policy; and, second, because it contravenes the settled rule that written contracts shall prevail over the previous oral negotiations from which they result. Such a statement of intention to obtain, even an agreement, made in the previous parol negotiations, to allow, concurrent insurance, is merged in the subsequent written contract evidenced by the policy, and is not available to the insured in an action on the policy, either as a representation, an agreement, an estoppel, or a waiver. Havens v. Insurance Co., 111 Ind. 90, 12 N. E. 137; Laclede Fire-Brick Manuf'g Co. v. Hartford Steam-Boiler Inspection & Ins. Co., 9 C. C. A. 1, 60 Fed. 352, 358; Insurance Co. v. Mowry, 96 U. S. 544, 547, 549; Insurance Co. v. Lyman, 15 Wall. 664, 669; Thompson v. Insurance Co., 104 U. S. 252, 259; Lewis v. Insurance Co., 39 Conn. 100; Pearson v. Carson, 69 Mo. 550; Tracy v. Iron-Works Co., 104 Mo. 193, 16 S. W. 203; Insurance Co. v. Neiberger, 74 Mo. 167; White v. Ashton, 51 N. Y. 280; White v. Walker, 31 Ill. 422; Faxton v. Faxon, 28 Mich. 159.

The policies in suit expressly allowed the existence of $27,500 of insurance concurrent with each of them. The amount of concurrent insurance which the insured had when these policies were issued, including the four policies issued at that time, did not exceed $27,500, and the policies were valid in their inception. The insured subsequently increased their insurance concurrent with each of these policies to $34,800, so that their total insurance was $38,300; but they never notified the companies or their agent of this increase until after the fire. There is no charge in the pleading, and no proof in the record, that the insured were induced not to read these policies or to enter into the contracts they evidence by any misrepresentation, deceit, or fraud of the companies or their agent. The entire plea on this subject that the insured make is:

"These plaintiffs allege and show to the court that they contracted with the agent of the defendant, authorized by defendants so to contract, for said insurance, under a statement and agreement made at the time, and concurrent with said contract and a part thereof, that the total insurance, including the policy issued by defendant, upon the property insured of the plaintiffs, should amount in the aggregate to the sum of forty thousand dollars, and that the policy of the defendant to be issued to the plaintiffs should contain an agreement for such additional and concurrent insurance as that the policy to be issued by the defendant would amount in the aggregate to forty thousand dollars, and that thereafter, and upon receipt of said policy, the plaintiffs, rely-

ing upon said contract and agreement so made as aforesaid, received and accepted said policy from the defendant upon the belief that said agreement had been fully carried out, and that said policy permitted concurrent and additional insurance so as aforesaid agreed upon, and, so relying upon such contract and agreement, the plaintiffs wholly failed and neglected to read said policy until after the occurrence of the fire which destroyed the property covered thereby. That, by reason thereof and of the facts aforesaid, the defendant ought not now to be permitted to assert as a defense in this action the facts set forth in the fourth defense contained in said answer, for it is estopped to deny its liabilities on the grounds and for the reasons therein stated."

If this plea is good, any party to a written contract may rely upon the oral statements made in the preliminary negotiations to it, fail to read his contract, and the previous oral negotiations will always prevail over the written agreement.

The proof is weaker than the plea. It is that the agent of the companies applied to the insured for the privilege of writing insurance upon their stock; that, in answer to a question by the agent, one of the insured said that they were going to carry $40,000 insurance; and that, after the latter had indulged in a conversation with another agent at another place, he went to the office of the agent of these companies, and told him that he would let him carry $10,000 on their stock. The provision which contained the consent of the companies to the $27,500 other insurance was written upon slips attached to the policies. Some days after the preliminary conversation just referred to, the policies were delivered to one of the insured. He testified:

"I looked at the face of the policies, and saw the amount, and put them in the safe. Q. What do you mean by the face of the policies? A. The written portion. Q. On the inside or outside? A. On the outside. Q. When did you for the first time ever learn that these policies limited the concurrent insurance to twenty-seven thousand five hundred? A. I think it was a day or so after the fire."

There is no doubt that there are cases where one party to a written contract has been so imposed upon by the fraudulent representations of its contents, or by some artifice or deceit of the other party, which prevents him from reading it, that he may be excused for ignorance of its contents. But I cannot subscribe to the proposition that a mere statement or agreement as to the terms of the proposed contract, made in the preliminary oral negotiations which result in the subsequent written contract, will excuse either party from reading the contract when it is delivered, or will reverse the settled rule that the written contract must prevail over the preliminary negotiations. It is the duty of every party to a contract to read it and to know its contents when he has an opportunity to examine it before he accepts it, and in the absence of fraud, concealment, or misrepresentation as to its contents he must be conclusively presumed to have knowledge of them. Contracts for insurance furnish no exception to this rule. Morrison v. Insurance Co., 69 Tex. 353, 359, 6 S. W. 605; Quinlan v. Insurance Co., 133 N. Y. 356, 365, 31 N. E. 31; Wilcox v. Insurance Co. (Wis.) 55 N. W. 188; Fuller v. Insurance Co., 36 Wis. 599, 604; Herbst v. Lowe, 65 Wis. 321, 26 N. W. 751, 754; Hankins v. Insurance Co., 70 Wis. 1, 2, 35 N. W. 34; Herndon v. Triple Alliance, 45 Mo. App. 426, 432; Palmer v. Insurance Co., 31

Mo. App. 467, 472; Insurance Co. v. Yates, 28 Grat. 585, 593, 594; Ryan v. Insurance Co., 41 Conn. 168, 172; Barrett v. Insurance Co., 7 Cush. 175, 181, 182; Holmes v. Insurance Co., 10 Metc. (Mass.) 211, 216; Insurance Co. v. Swank, 12 Ins. Law J. 625, 627; Insurance Co. v. Hodgkins, 66 Me. 109, 112, 113; Insurance Co. v. Neiberger, 74 Mo. 167, 173; Beach, Ins. § 414 and cases cited. The entire plea and all the evidence in the record that it is claimed tends to show the fraudulent misrepresentation that excused the insured from reading their policies is set forth above. This evidence does not show that the agent of the companies promised or represented that the policies would contain a provision that would allow the insured to carry $40,000 insurance, and, even if he had made such a promise, it would not have constituted a fraudulent representation that would avoid the provision on that subject actually inserted in the policy, or that would excuse the insured from reading it. Fraud cannot be predicated of such a promise or prophecy. Railway Co. v. Barnes, 12 C. C. A. 48, 50, 64 Fed. 80; Kerr, Fraud & M. p. 85, note 3; Sawyer v. Prickett, 19 Wall. 146, 163. It is not the misrepresentation of an existing fact. It is not calculated to impose upon the insured, or to prevent them from reading their policy and learning whether or not the promise is performed. If, when the policy is delivered. they do not read it, it is their own negligence, and not the previous promise of the agent, that is the proximate cause of their ignorance of its contents, and they cannot be relieved from the effect of their carelessness on the ground of alleged fraud, because none exists. Thus it appears that there was neither allegation nor proof that the insured were induced to fail to read these policies by any deceit or fraudulent misrepresentations of the companies or their agent as to their contents, and this case presents the naked question whether or not a statement of an intention to increase insurance, made by the insured in the preliminary negotiations which result in a written policy, will estop the insurance company from making or enforcing the usual provision that it shall have notice of and consent to any increase after the policy is issued, or the policy shall be void.

It is conceded that there is much reason and authority for the rule that where, at the time of the issue of a policy, concurrent insurance exists, to an amount in excess of the amount allowed by the policy, and that fact is known to the agent when he issues it, and also where, after the issue of the policy, the concurrent insurance is increased above the amount permitted, and notice of that fact is given to the agent, and, by his verbal agreement to indorse the permission, or by like action, he leads the insured to believe that the company consents to the increase, the company is estopped to enforce the provision that the policy is void for lack of its consent, or will be held to have waived the provision. There is reason and justice in this rule. It is founded on the proposition that it is a fraud for an insurance agent to issue a policy that he knows to be void in its inception. This rule, however, is radically different from the proposition that when, in the parol negotiations preliminary to a written contract, one party announces his intention to do an act

in the future that is material to the contract, the other party is estop-
ped to contract with him that he shall have notice of and consent to
this act when done, or his contract shall thereafter cease to be bind-
ing.    This is the vital proposition on which the decision of this case
turns.    It is far-reaching in its effect, and if successfully maintained
will, in my opinion, strike down the provisions of thousands of
leases and agreements that attempt to fix by contract the rights of
parties when contemplated acts shall be done.    An examination of
the authorities cited in the opinion of the majority which treat of
either of these propositions will disclose the fact that Pechner v.
Insurance Co., 65 N. Y. 195;   Short v. Insurance Co., 90 N. Y. 16;
Morrison v. Insurance Co., 69 Tex. 353, 6 S. W. 605;   Bennett v. In-
surance Co., 70 Iowa, 600, 31 N. W. 948;   West Coast Lumber Co. v.
State Inv. & Ins. Co. (Cal.) 33 Pac. 260;   Insurance Co. v. Earle, 33
Mich. 143;   Insurance Co. v. Luttrell, 89 Ill. 314;   Viele v. Insurance Co.,
26 Iowa, 9;   and May, Ins..§§ 369, 370,—go no further than to sustain
the former proposition, and do not discuss the latter.    Carrugi v. In-
surance Co., 40 Ga. 135, and Planters' Mut. Ins. Co. v. Lyons, 38 Tex.
253, hold that where, after the policy is issued and delivered, the in-
sured applies to the agent for consent to take additional insurance,
and the agent consents, but fails to write the indorsement on the pol-
icy, and thereupon the insured obtains the additional insurance, the
company thereby waives the provision in question.    But this is a
very different holding from the proposition that a notice of in-
tention to take subsequent insurance, given in the negotiations pre-
liminary to the contract, estops the company from making a writ-
ten contract that it shall have notice of the insurance when taken,
and the option then to cancel its policy or to consent to the insur-
ance.    Suppose that the companies in the Carrugi and Planters'
Insurance Company Cases had notified the insured in writing
that they would not consent, and that their policies would be can-
celed, unless they were informed when and what amount of addi-
tional insurance was actually taken, would they then have waived
the provision?    In the case at bar the companies did more than
that.    They made the notice of the fact that the subsequent insur-
ance was taken, and their consent to it, a condition of the continu-
ance of their liability by the very terms of their original contract.
Havens v. Insurance Co., 111 Ind. 90, 12 N. E. 137, the only other case
cited in the opinion of the majority which discusses either of the
propositions, affirms a decision which sustained a demurrer to a
complaint upon a policy which allowed no concurrent insurance
where  the insured had subsequently taken $1,000 additional insur-
ance without notice to the company, although the complaint contain-
ed the following allegation:

"The plaintiff further avers that it was expressly agreed and understood
that said plaintiff was to have permission to take out an additional insurance
of one thousand dollars on said building in any other company, and at any
other time she desired, and said company agreed to insert said condition in
said policy, which it wholly failed to do.  And plaintiff says that, relying upon
said promise, and in pursuance of said contract and agreement, she had effect-
ed an insurance on said building in the sum of one thousand dollars in the

Phoenix Insurance Company of Brooklyn, New York, as permitted by the express agreement aforesaid."

None of these cases appear to me to support the proposition on which the decision of this case must rest, and the case last cited expressly disaffirms it.

The evidence in this case does not support the plea that an agreement was made in the previous oral negotiations that a provision should be inserted in the policy allowing $37,500 concurrent insurance. It goes no further than to prove that one of the insured stated that he intended to take out $40,000 of insurance in all. Even if there had been such an agreement, it could not prevail over the written contract.

In Insurance Co. v. Lyman, 15 Wall. 664, 669, Mr. Justice Miller, in delivering the opinion of the supreme court, said:

"Undoubtedly, a valid verbal contract for insurance may be made, and when it is relied on, and is unembarrassed by any written contract for the same insurance, it can be proved, and become the foundation of a recovery, as in all other cases where contracts may be made either by parol or in writing. But it is also true that when there is a written contract of insurance it must have the same effect, as the adopted mode of expressing what the contract is, that it has in other classes of contracts and must have the same effect, of excluding parol testimony in its application to it, that other written instruments have. * * * We think it equally clear that, the terms of the contract having been reduced to writing, signed by one party, and accepted by the other at the time the premium of insurance was paid, neither party can abandon that instrument as of no value in ascertaining what the contract was, and resort to the verbal negotiations which were preliminary to its execution, for that purpose."

In Thompson v. Insurance Co., 104 U. S. 252, 259, the policy provided that it should be void on the nonpayment of the note taken for the premium, and the supreme court held that a plea that a parol agreement was made at the time of the giving and accepting of the note and policy that the policy should not become void for the nonpayment of the note, but should only be voidable at the election of the company, was bad. Mr. Justice Bradley, in delivering the opinion of the court, said:

"An insurance company may waive a forfeiture, or may agree not to enforce a forfeiture; but a parol agreement, made at the time of issuing a policy, contradicting the terms of the policy itself, like any other parol agreement inconsistent with a written instrument made contemporary therewith, is void, and cannot be set up to contradict the writing."

In Insurance Co. v. Mowry, 96 U. S. 544, 547, the policy provided that it should be void and wholly forfeited if the premiums were not punctually paid. The agent who procured the policy agreed with the insured that the company should give notice when the premiums fell due, but this agreement was not contained in the policy. The company failed to give the notice, and the insured failed to pay the premium. The agreement of the agent before the policy issued was claimed to be an estoppel of the company against insisting upon the forfeiture of the policy. Mr. Justice Field, in delivering the opinion of the court, said:

"All previous verbal arrangements were merged in the written agreement. The understanding of the parties as to the amount of the insurance, the conditions upon which it should be payable, and the premium to be paid, was

there expressed, for the very purpose of avoiding any controversy or question respecting them. * * * An estoppel cannot arise from a promise as to future action with respect to a right to be acquired upon an agreement not yet made. * * * The doctrine has no place for application when the statement relates to rights depending upon contracts yet to be made, to which the person complaining is to be a party. He has it in his power in such cases to guard in advance against any consequences of a subsequent change of intention and conduct by the person with whom he is dealing. For compliance with arrangements respecting future transactions, parties must provide by stipulations in their agreements when reduced to writing. The doctrine, carried to the extent for which the assured contends in this case, would subvert the salutary rule that the written contract must prevail over previous verbal arrangements, and open the door to all the evils which that rule was intended to prevent. White v. Ashton, 51 N. Y. 280; Bigelow, Estop. 437, 441; White v. Walker, 31 Ill. 422; Faxton v. Faxon, 28 Mich. 159."

I concur in the views expressed in these opinions of the supreme court. I think that they are applicable to this case, and that the judgment should be reversed.